# IN RE ASSESSMENT OF TAXES, C. BREWER & CO.,. LIMITED.

## APPEAL FROM TAX APPEAL COURT, HONOLULU.

SUBMITTED MARCH 25, 1903.          DECIDED JUNE 1, 1903..

FREAR, C.J., GALBRAITH AND PERRY, JJ.

"Enterprise", as used in the third paragraph of Section 820, C. L.,
     means "the combined property which forms the basis of an enter-
     prise". *Inter-Island Steam Navigation Co. v. Shaw,* 10 Haw. 624,
     followed.

Under the term "combined property" as used in that section no prop-
     erty is made taxable which is not included within the definitions
     of the terms "real property" and "personal property" set forth in
     Sections 818 and 819.

The stocks and bonds of private corporations are not taxable under
     existing laws in this Territory.

Sugar plantation agency contracts are "contracts" within the meaning
     of that word as used in Section 819, and taxable; but neither
     promissory notes nor accounts receivable are such "contracts",
     nor are they taxable.

Where by reason of the skill, experience and integrity of the cfficers and servants of a corporation, its good will and the unity of ownership and the unity of use of its various items of propertv, the value of the tangible property of such corporation is increased, such increase of value is nevertheless the value of such tangible property and the latter is taxable under our statute at such increased value.

When the combined property forming the basis of an enterprise for profit consists in part of taxable and in part of non-taxable property and by reason of unity of ownership and unity of use and other intangible elements the aggregate value of all of such combined property is increased, such increment of value in so far as it is due to the non-taxable property is not taxable; and when the increment of value of the taxable property is due wholly to its unity of ownership and use with the non-taxable and not to the unity of ownership and use of its own parts,—when, in other words, the taxable property, considered independently of the non-taxable, is of no greater value when combined in use as an enterprise for profit than the total of its separate parts—such increment is not taxable.

In ascertaining the aggregate value of all the property owned by a corporation the amount of the debts, if any, of the corporation should be added to the selling price of the shares of its capital stock.

OPINION OF THE COURT BY PERRY, J.

(Galbraith, J., dissenting.)

The appellant returned for taxation for the year 1902 its leasehold interest in certain parcels of land, and the buildings thereon, at $36,902.98, merchandise, cash in hand and cther personal property at $45,302.18 and gross insurance premiums received during the year 1902 at $24,832.99, and the total of these separate items, $107,038.15, as the "aggregate value of the combined real and personal property which is the basis of the business enterprise known as C. Brewer & Co., Limited." The assessor, on the other hand, assessed the combined property, under Section 820, C. L., at $1,121,137, reaching that figure by the following method:

10,000 shares (capital of the concern) at $412.50
    (market price at sales of a few shares)....$4,125,000.00
Less assessed value of Hawaiian Stocks and
    Bonds owned by the Company........... 2,851,700.00

                        $1,273,300.00

Less 10%, probable reduction in
    sales of large blocks.........$127,330.00
    and insurance premiums..... 23,833.00
                        152,163.00

                        $1,121,137.00

The Court of Tax Appeals held that the assessment was correctly made under Section 820 and approved the method pursued by the assessor in ascertaining the aggregate value, deducting, however, 15 % in place of 10 %, from the market value of a few shares to ascertain the market value of the whole and computing such percentage on the total before deducting the value of the exempt property and not after, as was erroneously done by the assessor. The total valuation fixed by that court was $629,717.00, i.e.:

10,000 shares at $412.50.......        $4,125,000.00
Less 15 % .................$ 618,750.00
Less Hawaiian stocks and bonds. 2,851,700.00
    and insurance premiums... 24,833.00
                    3,495,283.00

                      $ 629,717.00

Section 820 of the Civil Laws, under which the assessment was made and sustained, reads as follows: "All real and personal property and the interest of any person in any real or personal property shall be assessed separately as to each item thereof for its full cash value.

"Provided, however, that in all cases where real and personal property, or several classes or kinds or parcels of real or per-

sonal property respectively, are combined and made the basis
of an enterprise for profit, the combined property forming such
basis of such enterprise for profit, shall be assessed as a whole
on its fair and reasonable aggregate value.

"In estimating the aggregate value of each such enterprise
for profit, there shall be taken into consideration the net profits
made by the same, also the gross receipts and actual running
expenses; and where it is a company being a corporation whose
stock is quoted in the market, the market price thereof, as well
as all other facts and considerations which reasonably and
fairly bear upon such valuation.

"In ascertaining the aggregate value of the property con-
stituting an enterprise for profit for the purpose indicated by
this Section there shall be excluded therefrom the value of
shares, in other Hawaiian Corporations, held or owned by such
enterprise, and all property on which specific taxes are levied.

"And further provided, that when ·any real estate or house
is leased or rented, the sum of eight years' rental thereof shall
be the assessment value of such real estate or house, unless such
valuation shall be manifestly unfair or unjust." For the ap-
pellant it is contended that that section does not authorize the
taxation of any property not included within the definition of
the term "real property" or of "personal property" as set forth
in Sections 818 and 819, that the Tax Court therefore erred
in including in the total valuation the value of certain classes
of property or elements not within those definitions, to wit,
stocks and bonds in private corporations, bills and accounts
receivable, good will, business experience and ability and in-
tegrity. For the assessor, on the other hand, the contention is
that the aggregate value referred to in Section 820, is of *all*
the property of the enterprise of whatever kind and whether
defined in the two preceding sections or not. Sections 818 and
819 read: "The term 'Real Property' for the purposes of this
Act, shall mean and include all lands, and town lots and house
lots with the buildings, structures, fences, wharves, improve-
ments and other things erected on or affixed to the same.

"The term 'Personal Property' for the purposes of this Act, shall mean and include all household furniture and effects, Jewelry, watches, goods, chattels, wares and merchandise, machinery, Hawaiian ships or vessels, whether at home or abroad, all moneys in hand, leasehold and chattel interest in land and real property, franchises, patents, contracts, growing crops, public stocks and bonds not exempted by law from taxation, and all animals not herein specifically taxed."

The decision in the case of the *I. I. S. Navigation Co.,* 10 Haw. 624, has much that is applicable in the case at bar. In that case, as in this, the taxpayer contended that "the new law like the old, in so far as it bears upon the present case, provides for a tax upon property only; that a business or enterprise is to be distinguished from the property which forms its basis, in that the value of the former may depend a great many things besides the property, as, for example, upon labor, skill, experience, rapid turning of capital, want of competition and especially good will; that all these elements combine to produce the earnings and determine the market value of the stock, as well as the value of the enterprise; * * * that the assessor by considering chiefly, almost entirely, the earnings and the market value of the stock, proceeded on a wrong principle and really estimated the value of the enterprise, and erroneously took this as the value of the property, as if there were no distinction between the two." The court said, at page 630, "It is true, these considerations" (the earnings, the market value of the stock and others) "are referred to in Section 17" (C. L., Section 820) "(third paragraph) only in connection with the value of the 'enterprise,' but we have no hesitation in holding that 'enterprise' as here used was intended to mean 'the property forming the basis of an enterprise' as in the preceding paragraph, or 'the property constituting an enterprise' as in the succeeding paragraph; this is also obvious from the language of Sec. 68 which requires the person making the return to set forth the aggregate value of the combined property of the enterprise, after taking these and other things into consideration. This is holding, not that the words 'combined property' in other

parts of these sections were intended to mean 'enterprise,' but that 'enterprise' in the third paragraph of Sec. 17 was intended to mean 'combined property of an enterprise.' " It being thus settled, then, that the "enterprise" means the "combined property which forms its basis" and not something different, it remains to be considered what is included within the term "combined property" or the term "the property forming the basis" of the enterprise.

The second paragraph of Section 820 shows clearly what the combined property referred to is. The language used is, "Provided, however, that in all cases where real and personal property, or several classes or kinds or parcels of real or personal property respectively, are combined and made the basis of an enterprise for profit, the combined property forming such basis of such enterprise for profit, shall be assessed," etc. The "combined property" naturally and obviously means the real and the personal property or the several classes or kinds or parcels of real and personal property. Any other construction would be forced. What is real and what is personal property is set forth in Sections 818 and 819. "The term 'Real Property' *for the purposes of this Act* shall mean and include * * * The term 'Personal Property' *for the purposes of this Act* shall mean and include" * * * . This express declaration of the meaning of those terms must govern unless, indeed, there is sufficient elsewhere in the Act to show that the words are used in another sense. It is argued that in the fourth paragraph of Section 820 the provision requiring the exclusion from the aggregate value of "the value of shares, in other Hawaiian Corporations, held or owned by such enterprise," shows by implication that under that section it was intended to tax property not included in the definitions set forth in the preceding sections, because Hawaiian stocks are not in the list there contained and therefore it would be unnecessary to expressly direct their exclusion. The argument, while not wholly without force, seems to us insufficient to warrant a disregard of the express definition given "for the purposes of this Act." The provision

may be accounted for on the theory that it was inserted through abundant caution. The intention claimed, if it existed, was not sufficiently expressed. So far as this particular matter of inclusion of corporation stocks is concerned, not only does Section 819 make taxable only *public* stocks and bonds (that the stocks and bonds owned by the appellant are not *public* stocks or bonds, see *O. R. and L. Co. v. Brown*, 8 Haw. 163), but Section 830 expressly provides that "the individual stockholders or members" of a corporation "shall not be liable to be assessed in respect of their individual shares or interest in such companies." This also disposes of the contention made for the assessor that the value of stocks and bonds of corporations other than Hawaiian owned by C. Brewer & Co. should not be deducted from the total value of all the property constituting the enterprise.

The capital stock of C. Brewer & Co. is divided into 10,000 shares of the par value of $100 per share. The market value of the shares, in small lots, is agreed to have been, on January 1, 1902, $412.50. Just what the selling price of large blocks or of the whole stock would have been at that time, is, of course, difficult to determine; but no reason is apparent for holding that the Tax Court erred in fixing upon 15% as the rate of deduction. As so ascertained, the market value of the 10,000 shares was $3,506,250. The total of bills payable and books debts owing by the corporation was $475,125.43. The market value of the shares represents the value of the property of the corporation *subject to its debts* whether secured by note or otherwise. Adding, then, the amount of the indebtedness to the selling price of the shares, the aggregate value of all of the property of the corporation, of whatsoever nature, is found to be $3,981,375.43. The assessed value of the stocks and bonds of private corporations, Hawaiian and others, and of certain land, situate on Maui, owned by the appellant and used in the "enterprise" but not taxable to the appellant in this Territory, or, as to the land, on this Island is $3,214,802, of the taxable leaseholds and other taxable property as returned, $82,205.16,

and the amount of bills and accounts receivable is $562,655.31, or a total of $3,859,662.47. Subtracting this latter amount from $3,981,375.43, there is found a difference of $121,712.96 which includes the value, if any, of certain agency contracts held by the concern with various sugar plantation companies and the increase of value due to the unity of use of the property of the company, to its good will and the business ability, experience and integrity of its officials and other servants. Whether the agency contracts, the bills and accounts receivable and the increase of the value due to unity of use, etc., or any of these, are taxable to the appellants, are questions involved.

As to the agency contracts. It appears from the evidence that the company entered into an agreement, in writing, with the Onomea Sugar Company, whereby it undertook to make certain advances of money to be used in carrying on the business of sugar planting and manufacture, to make purchases and sales for the principal and otherwise to act as agent, its compensation being a percentage of the proceeds of the sugar sold. This agreement was for a definite period of time of which seven years remained unexpired at the date of the hearing below. The company also holds a similar agreement with the Ookala Sugar Company (one year of the term unexpired at the date of the trial) and four others, with other corporations, which are verbal and not for any specified period of time. These agreements, whether written or verbal and whether for a definite period or terminable at will, are certainly all "contracts" within the meaning of Section 819. Whether or not they have any substantial value is another question. Those terminable at will, as also that with the Ookala Sugar Company for a term of one year only, have of themselves no cash value,— nothing could be realized upon an attempted sale of a privilege to act as agent which privilege carried with it no assurance of its continuance for a definite length of time. The "full cash value" under the tax law means the value for purposes of sale, if the property is salable, and not the value to the owner. *In re Assessment of Taxes, James B. Castle, ante,* p. 1. If a con-

tract is by its terms non-assignable, the test would be what it would be worth if it were assignable. *Ib.;* also *Knudsen v. Stoltz,* 8 Haw. 81. If the contracts under consideration have any value by reason of the ownership by the same company of large portions of the capital stock of the corporation with which the contracts are made, then such value is not taxable to the company because growing out of and due to the ownership of property which, as above seen, cannot be taxed to the company. As to the contract with the Onomea Sugar Company, the plaintiff's witnesses claimed in their testimony that it was of no cash value, the assessor has placed no valuation upon it, and the evidence on the subject is meagre, indefinite and unsatisfactory. The contract introduced in evidence in the *Castle & Cooke* case, argued on appeal together with this case by consent, is not in evidence in this case, but even assuming that it is, still the evidence does not show what portion of the income of C. Brewer & Co. was derived from this particular contract, and it would be neither safe nor correct practice to find or declare the income-producing capacity of the contract by mere conjecture or assumption. Further, that income-producing capacity, if found, could not be considered alone, either by an intending purchaser or by the Court, in determining the value so considered. The length of the unexpired term, the amount of sugar produced in the past by the plantation and the probability and the uncertainty as to the amount to be produced hereafter, the cost of production, past and future, and the amount of the advances requisite therefor, the obligation to make those advances when needed and to procure the money for that purpose, the continued credit of the agents at home and abroad, are all elements that would likewise have to be considered. The evidence adduced is utterly insufficient to enable us to make findings on these and other essential questions of fact. It is impossible, on the record as it stands, to find with definiteness what the value, if any, is. We think that justice will be more nearly accomplished by regarding the contract, for the purposes of this case, as of no value.

Promissory notes and accounts receivable. While promissory notes are, technically speaking, contracts, in our opinion they cannot be held to be such within the meaning of that term as used in Section 819. Revenue laws are to be construed strictly. *Castle & Cooke v. Luce,* 5 Haw. 321. "A strict construction in such cases is reasonable, because presumptively the legislature has given in plain terms all the power it has intended should be exercised." Cooley, Taxation, 200. "It is a well settled rule of law that every charge upon the subject must be imposed by clear and unambiguous language. Acts of Parliament which impose a duty upon the public will be critically construed with reference to the particular language in which they are expressed. When there is any ambiguity found the construction must be in favor of the public; because it is a general rule that when the public are to be charged with a burden the intention of the Legislature to impose the burden must be explicitly and distinctly shown."—Potter's Dwarris, Statutes, 255. "In passing tax bills legislatures are presumed to be careful to include in the schedules all the items upon which they intend a tax to be levied, and to express themselves so clearly that there can be no reasonable doubt as to the articles to be taxed. Statutes imposing taxes ought not to be construed so as to include articles or (in this case) instruments not clearly coming within them. For instance, a statute levying a tax on horses would not include mules, and one levying a tax on mules would not include asses. In construing a statute, the same rule of construction which is applicable in construing all documents or instruments between private parties has force. A person who makes an instrument and profers it to another makes it what he chooses and must cause it to express distinctly all that he means it to do."—*The Minister of Finance v. Bishop & Co.,* 3 Haw. 793, 794, 795. Promissory notes stand in a class by themselves and, as was said of checks in *Minister of Finance v. Bishop & Co., supra.,* are of such use that if the legislature had intended to include them it would have mentioned them by their own name. In common language,

no one, speaking of "contracts," would be understood as meaning or including promissory notes . In the case just cited one of the questions was whether, under the Act of 1876 relating to stamp duties, a promissory note was liable to such duty under the title of "agreements." The Court held that it was not, saying: "The words of any statute are to be taken in their ordinary and usual signification, and although a promissory note is an agreement to pay money, yet, no one in reading this statute would consider the word 'agreement' as used therein to have such signification as would include either of the instruments which are the subjects of our consideration." That authority is clearly applicable to the case at bar. There is no distinction, material in this connection, between "agreements" and "contracts." So, too, in *Van Valkenberg v. Territory,* 14 Haw. 182, upon similar reasoning, a proxy, though conceded to be, technically speaking, a power of attorney, was held not be such within the meaning of the present Stamp Act, Section 918, C. L. It may be added that the fact that certain bonds are specifically named in Section 819 as taxable tends to support, to some extent, the views just set forth, as does also the further fact that the title, "notes of hand," specifically included in the law of 1876, does not appear in any of the later tax laws.

Accounts receivable, like promissory notes, are not, in common language, spoken of as contracts although technically they are contracts whether express or implied. Upon reasoning similar to that in the case of promissory notes, they must be held not to be "contracts" within the meaning of the statute.

Neither under the law of 1886, which also made "contracts" taxable, nor under the present statute, enacted in 1896, have promissory notes or accounts receivable been returned or assessed for taxation. The fact that the legislature, which may be presumed to have been aware of the construction thus placed upon the law by the executive officials of the government and by the public generally, has taken no steps to amend the law

in this respect, is not without weight. It tends to show the intention and understanding of the legislature in the matter.

The question concerning the other elements, unity of use, good will, etc., which tend to increase the total of the value of the separate parts, has been already decided in the *Inter-Island Steam Navigation Co.* case. "The questions of greatest difficulty," said the court in that case, "are whether the 'aggregate value of the combined property, of an enterprise, though consisting chiefly of personal property capable of indefinite multiplication, may materially exceed the sum of the values of the parts taken separately and if so, how far the earnings or the market value of the stock may be considered in determining such value. In the first place, the word 'aggregate' as here used in the expression 'aggregate value' does not mean merely 'sum' or 'total.' That is not necessarily its only meaning in common usage, and in this statute the words 'as a whole' used in the same clause show that the word 'aggregate' was intended to qualify the word 'value' so as to make it mean the value of the property as a unit and not merely as a collection of separate items. This is obvious also from other portions of these sections of the statute. In the second place, it is evident that the legislature regarded the value of the property as a whole as materially greater than the sum of the values of the parts considered separately. In the third place, it is evident that the legislature thought that the earnings and, in the case of a corporation, the market value of the stock, of an enterprise, were important considerations in determining the value of the property as a whole. These views of the legislature should be given effect, if possible, and, in our opinion, they are well founded in reason and amply supported by authority." The court then proceeded to discuss the three classes of statutes which have been enacted in the United States in recent years, "as a result of a belief that the properties of large enterprises, especially corporations, possess a considerable value from the very fact of their magnitude or the relations of their different parts to each other, and that such increment of value escapes

taxation under the ordinary statutes," and for the purposes of subjecting to taxation that increment and the various factors, sometimes called intangible property, which go to make it up. "A third form of statute is one which, like our present statute, directs that the combined property shall be assessed as a whole. This is regarded as practically equivalent to the second form above mentioned" (one imposing tax upon both the tangible and the intangible property) "on the ground that the words 'as a whole,' or their equivalent, are intended to mean that the property is to be regarded with reference to the connection of its different parts, its earning capacity, and the uses to which it is put, in other words, not as passive, but as active, property,—the property of a going concern. The difference between this and the second form above mentioned is that this regards the tangible property as increased in value by the intangible factors, while that regards the intangible factors as property in themselves, though closely, or inseparably, connected with the tangible property." The view of the Supreme Court of Ohio, declared in *St. v. Jones,* 51 O. St. 492, that in estimating the value of the tangible property as a whole, it was to be considered as affected by the intangible factors, though these were not taxable themselves, was referred to with approval and practically adopted, as was also the following language quoted from the opinion: "It is contended that when the value of the shares of the capital stock of a corporation is augmented through the franchise, good will and successful management of the business of the concern, such value should not avail to add to the true value in money of the tangible property of the corporation for the purpose of taxation. * * * But the property of a corporation may be regarded in the aggregate, as a unit, an entirety, as a plant designed for a specific object; and its value may be estimated not in parts, but taken as a whole. If the market value—perhaps the closest approximation to the true value in money—of the corporate property as a whole, were inqired into, the market value of the capital stock would become a controlling factor in fixing the value of the property.

Should all the stockholders unite to sell the corporate plant as an entirety, they would not be inclined to sell it for less than the market value of the aggregate shares of the capital stock. * * * If by reason of the good will of the concern, or the skill, experience, and energy with which its business is conducted, the market value of the capital stock is largely increased, whereby the value of the tangible property of the corporation, considered as an entire plant, acquires a greater market value than it otherwise would have had, it cannot properly be said not to be its true value in money within the meaning of the constitution, because good will and other elements indirectly entered into its value. The market value of property is what it will bring when sold as such property is ordinarily sold in the community where it is situated; and the fact that it is its market value cannot be questioned because attributed somewhat to good will, franchise, skillful management of the property, or any other legitimate agency." It was upon this theory of the law that the assessment then under review was sustained.

We now quote further from *St. v. Jones, supra*: "It will, we think, be conceded that the earning capacity of real estate owned by individuals may be considered in fixing its value for taxation. Take an office building on a prominent street in one of our large cities. It will not be doubted, that by care in the selection of tenants, and in the preservation of the reputation of the building, by superior elevator service, by vigilance in guarding and protecting the property, by the exercise of skill and knowledge in the general management of the premises, a good will of the establishment will be promoted, which will tend to an extra increase in the earning capacity and value of the building. For the purpose of taxation, it would be none the less the true value in money of the building, because contributed to by the operative causes that gave rise to the good will. We discover no satisfactory reason why the same rule should not apply to the valuation of corporate property—why the selling value of the capital stock, as affected by the good will of the business, should be excluded from the consideration

of the board of appraisers and assessors under the Nichols Law,. charged with the valuation of corporate property in this state, especially as the capital stock when paid up, practically represents, at least, an equal value of the corporate property."

In *Sanford v. Poe,* 69 Fed. 546, the U. S. Circuit Court of Appeals, in considering the validity of the same Ohio law with reference to the commerce clause of the Federal Constitution, held that "tax imposed is not a license tax, nor a tax on the business or occupation, nor on the transportation of property.. * * * It purports to provide for a tax upon property within the State of Ohio," and on appeal the United States Supreme Court (165 U. S. 194, 226) said of this: "The line of reasoning thus pursued is in accordance with the decisions of this court already cited. Assuming the proportion of capital employed in each of several states through which such a company conducts its operations has been fairly ascertained, while taxation thereon, or determined with reference thereto, may be said in some sense to fall on the business of the company, it is only indirectly. The taxation is essentially a property tax, and, as such, not an interference with interstate commerce."

In the *Inter-Island* case the court perhaps went no further than to hold that where good will, skill and experience contribute incidentally only to the value of the taxable property of the corporation, such increased value cannot be said not to be the value of such taxable property, and it may be that under the statute, correctly construed, the intangible elements just named in a case in which they do not contribute incidentally only to the value but constitute the main or a substantial and clearly distinguishable part of the property should be excluded in determining the aggregate taxable value of the enterprise.

Out of a total market value of the enterprise as a whole of $3,961,375.43, $562,655.31 is accounted for in bills and accounts receivable and $3,297,007.16 in other specific property (including both taxable and non-taxable property), leaving only $121,712.96 as the increase of value due. to unity of ownership and use of *all* the property and to good will,.

skill and experience. If this increase were credited proportionally to the taxable (separate value, $82,205.16) and to the non-taxable property (separate value $3,777,457.31), the taxable property would appear to have increased in value, by reason of all of these intangible elements and by reason also of the unity of use of its parts with the non-taxable property, $2,592.26. But upon the evidence in this case can it be held that the taxable property, (other than the Onomea agency contract) which, regarded as a number of separate items, is returned at an undisputed total value of $82205.16, has any increased value due to its unity of ownership and to the use of *its* parts each with the others as distinguished from the unity of ownership and use of its parts with the non-taxable property? We think not. The taxable property consists merely of a leasehold and office building (separate value, $22,480.98), a leasehold interest in certain other land and a warehouse thereon (separate value, $14,422.00), certain merchandise (separate value, $36,414.11) and cash on hand, $3,262.82. Whether these items are considered separately or as combined property, their total and aggregate value for purposes of sale cannot on the evidence be found to be more than $82,205.16. If the use of this property in conjunction with that which is non-taxable renders the taxable of greater value *to its owners,* such added value cannot be considered as the true value for purposes of taxation. The value at which property is to be assessed under the tax law is the value for purposes of sale and not the value to the owner. *J. B. Castle* case, *ante,* p. 1.

The valuation of the taxable property is fixed at $82,205.16, as returned. In addition to this the amount of gross insurance premiums received by the company is, of course, subject to the specific tax provided by the statute.

*Robertson & Wilder* for assessor.

*W. A. Whiting* and *C. F. Clemons* for taxpayer.

### DISSENTING OPINION OF GALBRAITH, J.

I understand that one proposition in particular was settled by the decision of this Court in *Inter-Island Steam Navigation Co. v. Shaw,* 10 Haw. 624, namely, that real and personal property combined and used in an enterprise for profit can be properly valued as a whole or unit, for taxation purposes, under Section 820, C. L., and that when so valued the value of the combined property or unit may be much greater than the sum of the values of the several items forming the unit. In other words that the value of whole (the combined property) may be greater than the sum of the values of all of its parts.

From this proposition it follows as a necessary deduction that by whatever sum the value of the unit or whole enterprise exceeds the sum of the values of its several parts to that extent intangible property is valued for taxation under this statute and to that extent Section 820 provides for and creates a new and distinct class of property for taxation purposes, namely, intangible property, a class of property not included in real estate as defined in section 818, or personal property as defined in section 819. It can make no material difference so far as this proposition is concerned whether the increased value results from intangible elements in tangible property or from intangible property altogether.

As was said by the Supreme Court in the Express Companies case. "The burden of the contention of the Express companies is that they have within the limits of the State certain tangible property, such as horses, wagons, etc.; that that tangible property is their only property with the State; that it must be valued as other like property, and upon such valuation alone can taxes be assessed and levied against them.

But this contention practically ignores the existence of intangible property, or at least denies its liability for taxation. In the complex civilization of to-day a large portion of the wealth of a community consists in intangible property, and there is nothing in the nature of things or in the limitations of the Federal Constitution which restrains a state from taxing at its real value such intangible property. Take the simplest

illustration: B, a solvent man, purchases from A certain property, and gives to A his promise to pay, say $100,000 therefor. Such promise may or may not be evidenced by a note or other written instrument. The property conveyed to B, may or may not be of the value of $100,000. If there be nothing in the way of fraud or misrepresentation to invadidate that transaction, there exists a legal promise on the part of B to pay to A $100,000. That promise is a part of A's property. It is something of value, something on which he will receive cash, and which he can sell in the markets of the community for cash. It is as certainly property, and property of value, as if it were a building or a steamboat, and is as justly subject to taxation. It matters not in what this intangible property consists—whether privileges, corporate franchises, contracts or obligations. It is enough that it is property, which, though intangible, exists, which has value, produces income, and passes current in the markets of the world. To ignore this intangible property, or to hold that it is not subject to taxation at its accepted value, is to eliminate from the reach of the taxing power a large portion of the wealth of the country. Now, whenever separate articles of tangible property are joined together, not simply by a unity of ownership, but in a unity of use, there is not infrequently developed a property, intangible though it may be, which in value exceeds the aggregate of the value of the separate pieces of tangible property. Upon what theory of substantial right can it be adjudged that the value of this intangible property must be excluded from the tax list, and the only property placed thereon be the separate pieces of tangible property? * * * * * * * To say that there can be no such intangible property, that it is something of no value, is to insult the common intelligence of every man." *Adams Express Company v. Ohio,* 166 U. S. 185, 218, 219 and 220.

This theory of valuation ought to be well established in this jurisdiction since in the *Inter-Island* case intangible property was valued at $211,709.52, the difference between the return of the taxpayer of the aggregate values of the several items of property and the valuation of the whole approved by the Court,

making the value of the intangible property almost as great as that of the tangible valued separately.

The decision in this case is a conclusive answer to the contention of the taxpayer that no property can be valued or considered in estimating the value of the combined property as defined in the Section 820 except real and personal property as defined in the preceding sections. It will be remembered that Section 820 providing for valuing combined property and Section 871, providing for returning the same, were engrafted on the tax law by the revision of 1896. (See Session Laws, 1896, Act 51, Secs. 17 and 68) and that prior to that time no similar provisions were found in the tax laws of the islands while the definitions of real and personal property as given in sections 818 and 819. were carried forward from the tax laws of 1892 and 1882, with little change in the language except that the last definition of personal property is extended to include "contracts."

The phrase "for the purposes of this Act" in each of the sections defining property is found in the earlier tax laws, those that existed prior to 1896, and was brought forward with the definitions from those laws, such use of this phrase cannot properly be held to indicate an intention on the part of the legislature to restrict the use of the words real and personal property in section 820 within the definitions given prior to its enactment. Section 820 is the later expression of the legislative will on the question and ought to control. At any rate, this court has held as above indicated, that no such limitation was intended to be made.

Under my view of the question it is immaterial whether or not the investment in the stock and bonds of California Corporations amounting at par value to $363,102.00 is personal property within the definition given in Section 819, although it seems to me that there can be no serious doubt as a matter of law that the word "chattels" used in the definition is broad enough to include stock and bond within the definition of personal property. Bouvier; 2 Kent. 340; *Terhume v. Height,*

35 N. J. L. 279. The situs of these foreign stocks and bonds for taxation purposes follows that of the owner and is in this Territory and should be taxed here. *Bacon v. Tax Commissioners,* 126 Mich. 22; *McKeen v. Northampton,* 49 Pa. St. 525; *Ferrington v. Tennessee,* 96 U. S. 679; *Bristol v. Washington Co.,* 177 U. S. 133.

Contracts are specifically enumerated in the definition of personal property in Section 819 and are proper subject of taxation at their true cash value the same as other kinds of personal property.

The captial stock of the taxpayer is $1,000,000, its gross income for the year ending December 31, 1901, was $461,-044.38, expenses for the same period were $31,629.50, and net income or profits for that period $429,414.88.

It appears from the evidence that there were six plantation agency contracts held by the taxpayer and not returned for taxation. These it is admitted come within the definition of personal property and should be taxed the same as other personal property but it is found by the majority of the court that the evidence fails to show the value of these contracts and "that justice will be more nearly accomplished by regarding the contracts, for the purposes of this case, as of no value."

It may be admitted that the evidence does not offer as satisfactory data as might be desired for measuring the value of these contracts. But who is to blame for this? The facts were in the possession of the taxpayer. It was its duty to give them to the assessor or to the Tax Appeal Court. It did not do so. I submit that it is not in the interest of the "accomplishment" of "justice" to give to this taxpayer a premium for withholding information. In other words to hold that certain of its property, which we know is subject to taxation, exempt from taxation for the reason that the taxpayer failed to furnish exact evidence for fixing the value of the property, especially since there is evidence from which a valuation may be placed on this property.

It is shown by the evidence that the commissions realized by the taxpayer from these contracts for the year preceding, (1901) amounted to $91,110.00. This fact standing alone refutes the claim that the contracts have no ascertainable value. Property from which an annual income of $91,110.00 is realized has a taxable value that ought not to escape the payment of its *pro rata* part of the expenses of the government because its owner denies that it has taxable value and fails to furnish full information for measuring it.

It is a well-settled rule of law that income, or the source of income, or capacity to produce income, is almost universally made the basis upon which taxes are estimated. Cooley Taxation, 16. *Adams Express Company v. Ohio,* 165 U. S. 194; *Adams Express Company v. entucky,* 166 U. S. 171. Why should these agency contracts not be valued for taxation purposes by the amount of income or profit that the agents receive from them? It does not lessen their value that only a person of large means or a wealthy corporation could act as agent. Since the agent does not wish to part with the agency or to sell it, particularly so long as it is so profitable.

Applying the above rule to the scant fact relative to these contracts the court possibly would be justified in fixing a valuation on them for taxation purposes equal to the sum which, at interest, at the rate of 10% per annum would produce an amount equal to that realized from them annually by the taxpayer, or $91,-110.00, however, this would undoubtedly be a valuable guide in arriving at their true taxable value. To say that these contracts have no ascertainable value is to close one's eyes to the fact of the annual profit derived from them and that this is almost equal to ten per cent. on the par value of the taxpayer's entire capital stock. There is nothing in the record to warrant the inference that these contracts are of peculiar value to this taxpayer and that they would not be of equal value to any other person of ordinary business capacity. The fact that they are given as a favor by the plantation does not detract from their taxable value. The Tax Appeal Court fixed the value

of the taxpayer's taxable property at $629,717. This amount placed at interest at 10% per annum would only amount to $72,971.70 per year or almost $30,000.00 less than the amount realized annually from these contracts.

Considering the fact that the taxpayer did not produce the evidence that would have made it possible to fix the real value of these contracts and that the valuation placed on its property by the Tax Appeal Court does not appear to exceed the possible taxable value of these contracts alone I am convinced that the ends of justice would be subserved by the affirmance of the judgment of the Tax Appeal Court. This I think ought to be done.