# RE TAXES WAIALUA AGRICULTURAL COMPANY, LIMITED.

## No. 1842.

ARGUED NOVEMBER 19, 1928.　　　DECIDED FEBRUARY 1, 1929.

PERRY, C. J., BANKS AND PARSONS, JJ.

756

OPINION OF THE COURT BY PERRY, C. J.

The Waialua Agricultural Company, Limited, returned its property for taxation as of January 1, 1927, at a valuation of $4,600,000. The tax assessor assessed the property at $7,573,353, but in the tax appeal court admitted certain errors in its computations and there placed a valuation of $6,145,934 on the property. The tax appeal court rendered a decision valuing the property at $5,790,633.92. The taxpayer in the tax court claimed that the true value of the property was $4,007,393 and in this court claims the value to be $4,435,000. Both parties appealed from the decision of the tax appeal court.

The property was returned and assessed at its aggregate value as an enterprise for profit. The figures testified to by the taxpayer's witnesses, relating to the acreage of

its lands, the nature of its holdings, the tonnages of cane and of sugar produced, the cost of production, marketing and sale, the extent of its investments in the stocks and bonds of other corporations, the nature and the extent of its property not engaged in the production of sugar and other primary facts, stand undisputed. The controversy centers around the principles involved and the application of those principles in order to arrive at the values contemplated by law for the taxable property.

In the main the principles involved in cases of the taxation of the property of sugar-producing corporations have been clearly enunciated and repeatedly restated by this court. While the statute provides generally that "all real and personal property and the interest of any person in any real or personal property shall be assessed separately as to each item thereof for its cash value", it also provides as follows: "In all cases where real and personal property, or several classes or kinds or parcels of real or personal property, respectively, are combined and made the basis of an enterprise for profit, the combined property forming such basis of such enterprise for profit, shall be assessed as a whole on its fair and reasonable aggregate value. Land leased or sub-leased to others and not used by a taxpayer personally as a part of the combined property forming the basis of the enterprise for profit conducted by the taxpayer shall not be considered as a part of the combined property, nor included in the return or assessment of such property as a whole, but shall be separately returned and assessed. In estimating the aggregate value of each such enterprise for profit, there shall be taken into consideration the net profits made by the same, also the gross receipts and actual running expenses; and where it is a company, being a corporation whose stock is quoted in the market, the market price thereof, as well as all other facts and con-

siderations which reasonably and fairly bear upon such valuation. In ascertaining the aggregate value of the property constituting the basis of an enterprise for profit for the purposes indicated by this section, there shall first be included all property combined and forming the basis of such enterprise, whether within the definition of real or personal property set forth in this chapter or not, and there then shall be deducted therefrom the value of shares in other Hawaiian corporations, held or owned by such enterprise, the value of all property on which specific taxes are levied and the value of all property that would not be taxable if not so combined and made the basis of an enterprise for profit." R. L. 1925, Sec. 1320.

Three methods have been resorted to by this court under the statute, one or more in some cases and others in other cases, in order to ascertain the value of the property of an enterprise for profit. One may be referred to as the stock market basis under which is ascertained the market value of the stock on the assessment date as shown by the price obtained on or shortly before that date upon the sales of small lots of the stock and deducting therefrom a percentage (usually ten per cent) as indicating what large blocks of the stock or the whole issue would have brought if sold on the assessment date, adding to the valuation thus obtained the liabilities of the corporation on the theory that what the purchasers pay the market price for is the stock subject to the liabilities and then subtracting from that net value the value of all non-taxable property of the corporation.

Another may be referred to as the capitalization of profits method under which the probable future profit-producing capacity of the corporation is ascertained, mainly in the light of the experience of the past, and the amount of the average annual probable profits capitalized at a rate which is believed to be "the rate that the in-

vesting public expects upon investments in the taxpayer or in similar enterprises generally" (*Re Taxes H. C. & S. Co.,* 26 Haw. 708, 715), adding to that result the value of land leased or sub-leased to others and not used by the taxpayer as a part of the combined property forming the basis of the enterprise for profit and subtracting from the new total the value of non-taxables, the income from which has been used in the original capitalization, if any such income has been so used.

The third method, which has perhaps been used in fewer instances, is that of ascertaining the values of the separate items of property constituting the enterprise.

Both parties expressly stated in this court at the oral argument that no reliance is placed by them in this case upon the showing made under the third method or upon the showing made under the stock market method. Counsel for the taxpayer has asked us to restate the law on the subject of the relation of the values of the separate items of property to the value of the enterprise as a whole, contending, as we understand him, that one or more former judicial statements of this kind on that subject are inaccurate and require revision. Since the evidence on this branch of the case is deemed by the parties themselves unenlightening as to the taxable value of the property in question and since, as they have expressly stated, no reliance is placed by them upon the results reached by that method, we think it preferable not to re-examine at this time the law in question. And this we say without casting any doubt upon the correctness of former decisions.

In applying the method of capitalization of profits "the main consideration" in determining the amount of the profits to be used in the computation is, as has been repeatedly stated by this court, "the future; the past being of importance chiefly as a help in determining what the

future is likely to be." *In re Assessment of Taxes,* 11 Haw. 235, 237. "The tax in question is not an income tax, depending for its amount upon the income for the year preceding, but a tax on property the earning power of which is one of the most potent factors in determining its value." *Ib.* 238. "The conservative, not the speculative, spirit should control in matters of assessment." *Ib.* 240. In determining the amount of the probable future profits of the enterprise, no greater optimism and on the other hand no more pronounced pessimism should be indulged in as to either the gross proceeds or the cost of production than would actuate an intending purchaser of the stock of the corporation with knowledge of the facts. When a plantation has become well established, one not about to take under cultivation additional areas of land nor on the other hand about to discontinue considerable areas and when no unusual circumstances in the recent past have contributed either favorably or unfavorably to the performance and showing of the plantation financially, the record of the recent past ought to be of great importance to the court in determining what the future will bring, just as it would be of great importance to an intending purchaser.

While future prospects are thus potent factors in estimating value, events subsequent to the assessment date cannot be considered for the simple reason that at the assessment date they could not have moved the intending purchaser.

Rates of capitalization, already defined above, vary with the differing circumstances of different corporations. They will be lower when the annual profits are steadier and more nearly assured than where they are erratic and less certain. The causes contributing to regularity and certainty, or the opposite, of the profits of a plantation are therefore a material consideration. Rates of capitali-

zation may also differ at different periods of the history of the Territory. When money is scarce, as the term goes, or when capital is timid and those investing in bonds and mortgages require higher rates of interest, the rates demanded by investors in a somewhat less safe industry like a sugar plantation will be higher; and conversely when capital is plentiful and less timid and investors are satisfied with lower rates of interest the compensations demanded from investments in sugar may be correspondingly lower. What the rate of capitalization should be at any particular time or in the case of any particular sugar-producing corporation is a question of fact depending upon a multitude of circumstances and to be decided upon evidence. That evidence may consist either in the opinions of men qualified by financial experience to give them, or it may consist of the experience of the particular corporation in the recent past, or of other corporations or entities similarly situated and to a less important degree the experience of still other corporations and persons engaging in business.

When the command of the statute that "in ascertaining the aggregate value of the property constituting the basis of an enterprise for profit * * * there shall first be included all property combined and forming the basis of such enterprise, whether within the definition of real or personal property set forth in this chapter or not, and there then shall be deducted therefrom the value of shares in other Hawaiian corporations, held or owned by such enterprise, the value of all property on which specific taxes are levied and the value of all property that would not be taxable if not so combined and made the basis of an enterprise for profit," is strictly followed and the income from non-taxables is first included in the profits of the corporation and then the value of those non-taxables is deducted and when in such instances the value of

the non-taxables is clearly made known to the court by other evidence, it is obvious that the rate of capitalization to be applied to the income from the non-taxables must be such, necessarily, as to produce the known value of the non-taxables which is used later in making the deductions. It would be clearly unfair, to one party or to the other as the case may be, to deduct the non-taxables at their clearly shown market value as of the assessment date and at the same time to add in the original calculation of the income to be capitalized the income of the non-taxables capitalized at a rate which produces either a higher or a lower value for them than that which is well known and is used in the deductions. It may be that in some instances this will result in the use for capitalization of one rate as to the less certain and less dependable income received directly from the production of sugar and another rate for the more certain and more dependable income received from the stocks and bonds of other corporations or from other non-taxable investments. In principle there is no reason why two different rates of capitalization should not be thus used with reference to two different classes of income received by the taxpayer. The use of a rate of capitalization and of the method of capitalization of profits is merely a means to an end. It is merely for the purpose of ascertaining the true market value, the full cash value, of the principal of the property producing that income. When it appears that it would be illogical and productive of incorrect and unfair results to use as to certain income the same rate of capitalization which is used for other income, then the rate as to the first class of income must be abandoned and corrected.

The net result of all these considerations is that, ordinarily at least and perhaps in *all* cases, the income from non-taxables which are required by the statute to be deducted from the capitalization of the income may as well

not be included in the primary calculation of the income of the corporation which is to be capitalized, the principal of the non-taxables not being included in the deductions.

Under the capitalization of profits method an allowance should be made for estimated annual depreciation of articles which in the course of varying periods of time will become worn out in the business. The rate of depreciation is arrived at by estimating the probable length of life of the article in question, prorating its cost over the number of years of its probable life and deducting as an expense of production the resulting proportion for each year. The original cost of the article, and not the probable cost of its replacement some years later, is what is to be considered in this connection. The subsequent higher cost, if any, of replacement will in turn merit its own new, proportional depreciation. In addition to this allowance for depreciation it is also proper to allow as a part of the cost of production the cost of ordinary maintenance and minor repairs of the article, but not the cost of that which is in reality a total or a partial replacement. This latter applies only to those articles which, in spite of the ordinary repairs, have a limited length of life. If, as seems to be possible with some articles of machinery, the making of ordinary repairs results in prolonging indefinitely the life of the whole article, there is no room as to that article for an allowance for depreciation proper in addition to the actual outlays for repairs. In such cases of the latter nature only the cost of repairs and partial replacements from time to time can be deducted. The theory of an allowance for depreciation is, and the practice ought to be, that such charges or allowance for depreciation are not mere bookkeeping entries but are in truth a setting aside from time to time, out of income, of the amounts of depreciation (possibly to be invested in the meantime) for use at a later day, when required, in replacing the worn-out article.

Under the provision of the statute (Sec. 1320) that "in all cases where real and personal property, or several classes or kinds or parcels of real or personal property, respectively, are combined and made the basis of an enterprise for profit, the combined property forming such basis of such enterprise for profit, shall be assessed as a whole on its fair and reasonable aggregate value," the several classes or kinds of property which are to be assessed as a whole do not include lands or interests in lands belonging to persons or corporations other than the taxpayer in the particular case. The reference in the statute is merely to the several classes of property belonging to the taxpayer. It would therefore be unnecessary and improper under the capitalization of profits method to include primarily as a part of the income to be capitalized rents paid by the taxpayer for lands held by it under lease and used by it in the production of sugar. While the amount of such rents would tend to throw light on the value of the lands when taxation against their owner is under consideration, it does not tend to show the value of any property belonging to the taxpayer.

In applying the method of valuing the separate items of property, what is to be sought is the full cash value of each such item at the assessment date. This means, as has been repeatedly held by this court, the salable value, the highest amount that the property would sell for on the assessment date, either at public auction or at private sale, preceded by such notice as will obtain the best results, and either by selling the property as a whole or by selling it in lots or each article separately. In the absence of other evidence, the original cost, minus depreciation, may indicate the salable value,—particularly in cases in which the property has been recently acquired. Ordinarily, however, more direct and clearer evidence of the full cash value is obtainable.

In 1903, in *Assessor* v. *C. Brewer & Co.*, 15 Haw. 29, this court held expressly that the stocks and bonds of other corporations owned by a local corporation taxpayer are not taxable and that their value must be deducted from the total value of all property constituting the enterprise for profit,—in order to arrive at the true value of the taxable property of the enterprise. At that time section 818, C. L., gave a definition of the term real property "for the purposes of this Act"; and section 819 said: "The term 'Personal Property' for the purposes of this Act shall mean and include all household furniture and effects, jewelry, watches, goods, chattels, wares and merchandise, machinery, Hawaiian ships or vessels, whether at home or abroad, all moneys in hand, leasehold and chattel interest in land and real property, franchises, patents, contracts, growing crops, public stocks and bonds not exempted by law from taxation, and all animals not herein specifically taxed." The reasoning of the court was that in spite of an argument that might plausibly be made to the contrary, the statement of these two sections that they defined real property and personal property respectively *for the purposes of the Act* was too clear and unambiguous to be construed as admitting of additions to the lists of property there enumerated. It referred to the express enumeration as taxable of "public stocks and bonds not exempted by law from taxation" and drew therefrom the inference that the intention was to exclude from taxability private stocks and bonds. It also relied in part upon the provision of section 830 that "the individual stockholders or members" of a corporation "shall not be liable to be assessed in respect of their individual shares or interest in such companies."

Eighteen years later, in 1921, it was held in the tax appeal of American Factors, 25 Haw. 769, 775, that "under our statutes this stock" (of the American Hawaiian S. S.

Co., a New York corporation) "is not exempt from taxation unless the American Hawaiian S. S. Co. is carrying on business in this Territory", the reason given being that "while under section 1259, R. L. 1915, holders of shares of stock in companies are not liable to be assessed in respect to their individual shares or interest in such companies, yet by the provisions of section 1257, R. L. 1915, the word 'company' is held to mean only such corporations as are incorporated under the laws of the Territory and foreign corporations carrying on business in the Territory, and copartnerships, etc." In rendering this latter opinion the court made no reference to the prior decision in 15 Haw. 29. Apparently the earlier decision was overlooked. The word "company" was defined in section 1257, R. L. 1915, as including local corporations, foreign corporations carrying on business in the Territory and local copartnerships, in order to make applicable against all of those classes of entities the requirement of returns, statements and answers for taxation purposes and also to make clear that individual stockholders in any such corporation, as well as members of a copartnership, should not be liable to be assessed in respect of their individual shares or interest in such entities. The omission from the definition (of "company") in section 1257 of foreign corporations not doing business in Hawaii, was doubtless due to the fact that such corporations would have no taxable property in Hawaii and that therefore no returns, statements or answers could in any event be required from them. That omission was not indicative of an intention on the part of the legislature to make local owners of the stock in foreign corporations assessable and taxable upon that stock when the corporations themselves were not liable to taxation in Hawaii upon their own property situated wholly without the Territory of Hawaii.

These considerations are additional to the main reason

that the stocks and bonds of foreign, private corporations are not taxable as personal property in Hawaii simply because the statutory definition of personal property intended for the purposes of the chapter on taxation did not include them, as held by the court in 15 Haw. 29.

Again, in 1917, the legislature amended section 1240, R. L. 1915 (C. L., Sec. 819), by omitting therefrom the words "public stocks and bonds not exempted by law from taxation." This omission and amendment had the effect of rendering non-taxable certain public stocks and bonds which theretofore had been taxable and served to confirm the view that private stocks and bonds likewise continued non-taxable. A period of fourteen years had elapsed from the date of the decision in the *Brewer & Co.* case (15 Haw. 29) until the amendment of 1917 was passed and in the interim no amendment had been enacted by the legislature to counteract the effect of the decision of this court that stocks and bonds of private corporations, whether Hawaiian or foreign, were non-taxable. Legislative approval of that decision is clearly inferable. We feel unable to follow the ruling of the *American Factors* case and reaffirm that of the *Brewer & Co.* case.

Cash in bank and cash due to the taxpayer by its agents are not taxable against the taxpayer. The statute taxes, as included in personal property, "all moneys in hand", which excludes moneys not in hand. Moneys deposited in a bank are taxable to the bank if on hand on the assessment date, but are not even taxable against the bank if prior to that date the moneys have passed into the possession of others. So, also, of moneys due from the agents. They were taxable to the agents if on hand on the assessment date; otherwise not. The section relating to enterprises for profit (R. L. 1925, Sec. 1320) provides that in ascertaining the aggregate value of the combined property "the value of all property that would not be

taxable if not so combined and made the basis of an enterprise for profit" must be deducted.

Notes and bills receivable are not taxable. It was definitely so held in the *Brewer & Co.* case, 15 Haw. 29.

In making deductions, under the stock market method, for "the value of shares in other Hawaiian corporations, held or owned by such enterprise" (Sec. 1320) it is the full cash value and not the book value or the face value of these non-taxables that is to be deducted. The full cash value of such stocks is ordinarily to be found by taking, for small lots, the market price as of the assessment date or shortly prior thereto and for large lots the same market price minus a reasonable percentage (ten per cent has often been used by this court) on the theory above stated that large lots ordinarily will sell for a little less than small lots.

Coming now to efforts at valuation in the case at bar and employing undisputed figures furnished by the taxpayer, the application of the stock market method would result as follows:

325,000 shares @ $37.50 per

| | | |
|---|---|---|
| share | | $12,187,500.00 |
| Less 10%, | | 1,218,750.00 |
| | | $10,968,750.00 |
| Add liabilities: | | |
| Pay roll, | $ 71,933.17 | |
| Long term contractors, | 112,176.25 | |
| Personal and trade accounts | 25,307.24 | |
| Unpaid drafts, | 28,144.00 | |
| Income tax reserve (current) | 130,430.53 | |
| Deferred rent, | 1,627,081.05 | 1,995,072.24 |
| | | $12,963,822.24 |

Less value of non-taxable property:

| | | |
|---|---|---|
| Cash in bank, | $ 6,848.26 | |
| Due from agents, | 488,707.15 | |
| Accounts, notes and bills receivable, | 51,178.72 | |
| Autos and trucks, | 16,562.00 | |
| Investments in stocks and bonds of other corporations, certificates of deposit in banks, savings bank deposit and notes, | $9,429,535.74 | $ 9,992,831.87 |

Market value taxable assets, ...............$ 2,970,990.37

Both parties agree that this method of computation does not furnish the correct valuation of the property of this enterprise. We have inserted the schedule partly as a matter of interest but mainly to show the application of the principles involved and above dealt with. Cash in bank, credit with agents, accounts, notes, bills receivable, certificates of deposits in banks, deposits in savings banks and stocks and bonds in other corporations have all been deducted as non-taxable. Investments have been deducted at their market value as of the assessment date and not at their face value and the 150,000 shares of stock of the Hawaiian Pineapple Company owned by the taxpayer have been deducted at their market price as of the assessment date, less ten per cent, and not at their book value which in this instance was the same as the face value.

We apply the capitalization of profits method, which is recognized by both parties as the most reliable in this case, as follows:

Estimated annual profit, based on experience
of four years last past, ...............................$ 432,053.00

$432,053. capitalized @ 15%, ...........................$2,880,353.00

Add fee simple lands leased to others:

| | |
|---|---:|
| To Haw'n Pineapple Co., 7,116.580 A. @ $150., | 1,067,487.00 |
| To Haw'n Pineapple Co., 4,433.96 A., Waialua Agr. Co.'s leasehold interest in, acquired prior to May 2, 1917, | 427,695.37 |
| Other pineapple lands, 216.717 A. @ $150., | 32,507.55 |
| Taro and rice land, 22.113 A. @ $350., | 7,739.55 |
| Banana land, 119.720 A. @ $350., | 41,902.00 |
| Other land, 145.039 A. @ $100., | 14,503.90 |

$4,472,188.37

In determining in this schedule the prospective profit-producing capacity of this enterprise we deem it safer to rely upon the experience of the recent past rather than upon estimates of acres planted, tonnage produced, expense incurred, etc., for the future. The capacity of the plantation in acreage planted and tonnage produced seems to be clearly settled. There is no present program of expansion of acreage. There is no evidence of any contemplated improvements in cultivation, in milling or in marketing which will markedly affect the present scale of profits. There is no evidence of any estimate of tonnage for several years to come, although there is an estimate for the tonnage to be produced in 1927. The tonnage produced is almost certain to vary somewhat from year to year in the future as it has varied in the past. The price of sugar is likewise almost certain to vary from year to year. The mere fact that the manager, who has given an estimate of 39,844.48 tons of sugar for the crop of 1927, has habitually in his annual reports to the stockholders underestimated the crops by about three thousand or four thousand tons is not a sufficient reason for assuming that the total profits for the future will be substantially larger than the profits of the recent past.

Other elements enter into the calculation. In the absence of further testimony tending to show that the net profits for the future will average considerably higher or lower than those of the recent past, we deem it safer to rely upon the experience of the past. We have therefore taken as our estimate of the profits for the future the sum of $432,053, being the average annual profits for the years 1923, 1924, 1925 and 1926 (Exhibit 3), rather than the taxpayer's estimate of $430,088 arrived at by probable areas, tonnages, etc., and also in preference to the assessor's estimates arrived at by his views of probable areas, tonnages, etc. There is ample evidence, consisting partly of the opinions of financial and business experts and partly of the showing from the experience of other corporations, both local and from the mainland, tending to show that the rate of capitalization in this instance should be fifteen per cent. This taxpayer owns about one-half of its lands and leases the other half. Its cost of production is high compared with the cost of many other plantations. The cost of production being high, a small reduction in the price obtainable for sugar will more readily reduce or wholly wipe out the margin of profits than would be the case if the cost of production were lower. The price of sugar is always a more or less erratic thing, and, without in any wise exaggerating the subject, there are other uncertainties and possibilities of difficulty in the sugar industry. All these things prospective purchasers take into consideration. The items added to the capitalization thus reached, items of the valuation of lands and leasehold interest in lands, are all at figures which are undisputed. The total result by this method is a value of $4,422,188.37.

The item of $50,400, "land rent previously deducted" has not been included in the estimated future profit in pursuance of the principles above stated. That income

does not indicate the value of any property belonging to this taxpayer. It may be well, however, to here call attention to the fact that the inclusion of $50,400 as rents in the income and the deduction of $360,000 as the value of the non-taxable land which produced the same rents (see taxpayer's exhibit 18) would operate unfairly to the Territory. The $50,400, capitalized as it was at fifteen per cent, would show a value of the principal of $336,000. The value otherwise ascertained and used in the deduction was $360,000 or a loss to the government of $24,000 in assessable valuation. If $360,000 is the correct, deductible value of the land, it should also be the correct value to be added in respect of the same land, in estimating the value of *all* the combined property. In other words, as above stated, where the value of the principal to be deducted is known from other evidence, the capitalization of the income produced by that principal (in the earlier part of the same schedule) should be at such a rate of capitalization as to produce the true, known value of the principal. No more then would be subtracted in the second part of the computation than is added in the first part and the requirements of the statute in that regard will be fully satisfied.

Referring to taxpayer's exhibit 3, column E, "additional charge account inadequate depreciation absorbed," we have accepted these deductions as correct. The testimony is undisputed and reliable that for some years preceding 1926 inadequate depreciation had been taken by this taxpayer upon its property susceptible of depreciation and that the depreciation for all subsequent years during the remainder of the life of the property had been increased in exhibit 3 so as to have set aside by the end of the life of the property sufficient to wipe out its cost. This is in accordance with correct principles applicable to the subject of depreciation. Cross-examining

counsel and the witness (Richards) who superintended the calculations for depreciation and who testified on the subject spoke of the additional depreciation charged for depreciation for the years 1923-1926 as "abnormal". They were indeed abnormal in the sense that they were larger than they would have been if the correct percentage, based on the correct items of original cost, had been applied during the years preceding 1926; but as we understand the evidence, they were not abnormal in any other correct sense. The amounts taken for additional depreciation for the years 1923-1926, and perhaps to be taken for the years subsequent to 1926, plus the inadequate depreciation taken prior to 1923 were only such in the aggregate as to wipe out the original cost of the property by the time its useful life comes to an end. If, as we understand is the fact in this case, these items of depreciation are not merely bookkeeping entries but show an actual taking from gross income of moneys which are set aside (and perhaps invested) to equal and restore the original cost of the articles which are to be replaced at a probably larger cost, the showing thereby resulting in the lessened actual profits is a true and not a misleading showing. The profits would in reality be that much smaller because the money was necessarily used to repay the original cost of that much of the capital investment of the corporation.

Following the long-established procedure in tax cases, the return and the assessment take the place of pleadings and the valuation to be judicially fixed must be not less than the return nor more than the assessment. We find, therefore, that the value of the taxable property of this taxpayer on January 1, 1927, was $4,472,500; but since the taxpayer returned it at a valuation of $4,600,000, the return is sustained and the assessment and the decision of the tax appeal court are set aside. Decree accordingly.

*Marguerite K. Ashford (Thompson, Cathcart, Beebe & Winn* with her on the briefs) for the assessor.

*A. G. M. Robertson (Robertson & Castle* on the brief) for the taxpayer.