In the matter of the Estate of His late Majesty Lunalilo.

## SUPREME COURT—IN BANCO.

## APRIL TERM—1874.

*Allen, Ch. J., Harris, J.   (Judd, J., did not sit, having drawn the will and codicil.)*

IN THE MATTER OF THE ESTATE OF HIS LATE MAJESTY LUNA-
LILO, DECEASED.

A PERSON under guardianship as a spendthrift is not therefore inca-
pacitated to make a will.

OPINION OF THE COURT BY ALLEN, C. J.

This case is presented on appeal from the decision of a Judge of Probate, who admitted the will, with the codicil of His late Majesty Lunalilo, to probate.   The only question before us is as to the validity of the will.

It is admitted by the contestant that the alleged will was executed as required by the statute of the kingdom.

It is also admitted that at the time of making the alleged will the testator was under guardianship as a spendthrift, and that all the statutory provisions had been complied with, and Mr. Bishop, the executor named in the alleged will, was one of the guardians of the testator.

It is contended that the will is void, because at its date the testator was under guardianship.   The counsel for the contestant argue that Section 1463 of the Civil Code must be read in conjunction with Section 1354 and that the construction contended for is clearly within the spirit, if not within the exact letter of those enactments.

By Section 1463 it is declared that any person of full age and of sound mind, may dispose of his estate both real and personal by will.

The restriction of persons under guardianship is not made in terms, but it is contended that by virtue of Section 1350, the restriction is virtually made, as by it he is restricted from making any gifts, sales or transfers of real estate or personal estate during the guardianship, and if he does, the guardian can interpose and defeat them. But the statute gives the guardian no power to restrain the operation of a will which the ward may make.

A statute in derogation of the rights of persons must be construed strictly, and it is very evident that the Legislature when they passed the law that all persons of full age and sound mind might make a will, did not intend to add a restriction in a general law of guardians and wards. The word *gift* has not in the statute the same meaning as *will*, the one is a solemn instrument, executed with great formality, while the other is, to make it valid, by immediate transfer of the article.

It does not follow, therefore, because a person is under guardianship as a spendthrift, that he is incapacitated to make a will.

In the one case he is stimulated by his appetite and passions to dispose of his property for immediate personal indulgence, and hence the necessity for guardianship, while in the other he makes a disposition of his property to take effect after his death, and when the powers of his guardian terminate.

It is very evident that the Legislature were of opinion that the power of the person over his property in the former case was unsafe, while in the latter, its exercise was proper, otherwise there would have been a restriction in terms. The counsel contends that a will creates a trust, and a trust is regarded as a gift or conveyance of the property, the subject of the trust, to the persons who are its object, and therefore, the capacity to declare a trust is limited by the same rules as the power of disposing of property at law.

In the matter of the Estate of His late Majesty Lunalilo.

It is very true that a will may create a trust, but it must be executed according to the statute, and if so executed it is not in the nature of a contract. It differs from a deed of trust, for in the one case it does not take effect till after death, while in the other, to make it valid, it must be delivered in the life time of the grantor, who, being under guardianship, is restrained by law from doing it.

The counsel says: "Suppose that the testator had made a deed of gift in 1871 for a valuable consideration for advances, &c., to take effect after death, such a deed would have been construed as a will—it has been so ruled,—would such a gift have been valid under the statute?" It is very clear that it would not have been, for the reason that it would be in the nature of a contract to pay for advances to the spendthrift, to control which a guardianship was imposed.

The counsel suggests another example. He says: "Suppose in 1871 he had given a bond to A—consideration $10,000 or more, or sufficient for his extravagant expenditures—to execute a will in his [A's] favor, would the executor be bound to pay the consideration?" "Most certainly he would," says the counsel, "if he was not incapacitated under the act of guardianship from making such bond." The counsel has undoubtedly given a sound answer to his question; but it is evident by the law regulating the guardianship that the ward had not power to make such a contract, or any other contract, and therefore the bond would be void.

It is always a consolation to have one's opinions sustained by high judicial authority. In the case of Stave, appellant, vs. Damon and others, 12 Mass., 487, the Court gave an opinion that "if a lunatic under guardianship be restored to his reason, he may make a will, although the letters of guardianship are unrepealed." The same doctrine was maintained by the same learned Court many years afterwards

66

in the case of Breed *vs.* Pratt, 18 Pick., 115. The Court says that it is an act manifestly distinguishable from contracts and other acts to be done *inter vivos,* and involves no conflict of authority with the guardian. (See Redfield on the Law of Wills, Part I., 134, where the same rule of law is recognized.)

It is the judgment of the Court that the decree of the Probate Court, from which an appeal was taken, be affirmed, and that the proceedings in the case be remitted to the same Court.

L. McCully, for the executor, proponent.

Messrs. Stanley and Preston for contestant.

Honolulu, April 29th, 1874.