## THE QUEEN *vs.* M. G. SAN TANA.

### EXCEPTIONS.

HEARING, APRIL 20, 1893.          DECISION, MAY 15, 1893.

JUDD, C.J., BICKERTON AND FREAR, JJ.

(JUDD, C.J., DISSENTING.)

A was a servant of B, advertising his employer and soliciting orders, the customers forwarding the orders to be, the goods being sent to the parties ordering them;

Held :  That soliciting and advertising was not forwarding within the meaning of Section 2, Chapter 67, Laws of 1888.

OPINION OF THE COURT, BY BICKERTON, J.

The case came on for hearing at the May term, 1892, of the Circuit Court of the Third Judicial Circuit, held at Hilo, Hawaii, before the Chief Justice and a jury.   After the close of

the evidence, the Court refused to instruct the jury to acquit the defendant, as requested by defendant's counsel, but instructed them to find him guilty, "as, by his own admissions, he had violated the statute, Section 2, Chapter 67, of the Laws of 1888, in procuring orders for spirituous liquors, to be sent to H. Congdon & Co., with the intent that the same be supplied to these parties." Under the instruction given, the jury, without retiring, returned a verdict of guilty. To the refusal of the Court to charge as requested by defendant's counsel, and to the above charge as given, exceptions were taken, and the matter now comes here on a bill of exceptions. It appears from the record that the charge against the defendant was "violating Section 2, Chapter 67, Laws of 1888, at Hilo, Hawaii, in January, February and March, 1892." The evidence of the defendant is as follows :

"I am employed by Henry Congdon & Co. of Honolulu ; this is their license ; my business is to collect on this island and on Oahu, and I write letters for what people want. I take orders for them. This is a power of attorney from Congdon to me. I write letters for people to Henry Congdon & Co. ; have been in the employment eight years. I have never received or delivered any liquor ; I write letters for such people who don't know how to write themselves. If they know how to write themselves of course I do not write for them. I wrote a letter for Oliveira, he got his wine, I have collected money from him and the other witnesses. I know Andrade, he came to me and asked me to allow him to deliver the liquor. I told him I would write to my employer and let him know. Bills and receipts are sent to persons who order them by Andrade, to whom they are sent with the shipping receipt. All the packages are marked with and directed to the names of the persons who order them ; I am paid a salary, no commissions, and get no other compensation. I am not interested in the profit on the liquor ; I live in Honolulu ; I write letters for those who order liquors ; they send the letters to Honolulu themselves. I never wrote for more than one in each letter ; write a separate letter for each one ; they

sign it. I have written letters in English and in Portuguese."

The section of the law under which the defendant is charged is as follows:

"It shall be unlawful for any licensed peddler, trader, or storekeeper, or any bookkeeper, clerk or employee of such peddler, trader, or storekeeper, except such as are licensed to deal in spirituous liquor to forward to any other person any order for the forwarding, sale or purchase of spirituous liquors, with intent that such spirituous liquors shall be forwarded, sold or furnished either directly or indirectly by the person or persons to whom such order is sent or given, to or for the use of any person or persons other than the person or persons who shall forward such order."

The question then is: Has the defendant admitted in his evidence any act done by him which would be a violation of this particular law? The fact of his being in the employ of Congdon & Co., or that he collects for them on Hawaii or Oahu, or that he writes letters to Congdon & Co. for people who signed and forwarded those letters themselves, ordering wine, or that he wrote to his employers asking them to allow Andrade to deliver the wine to the people ordering it, does not make him guilty of violating this law. In one part of his evidence he says: "I take orders for them;" this is explained in the latter part of his evidence; but nowhere does he or any other witness say that defendant forwarded any order for liquor. If the law provided that soliciting or procuring orders for liquor is unlawful, undoubtedly defendant would have to be convicted under this charge; but it does not. We cannot change the language of the statute, supply a want, or enlarge upon it in order to make it suit a certain state of facts. We do not legislate or make laws. Even where the Court is convinced in its own mind that the Legislature really meant and intended something not expressed by the phraseology of the Act, it has no authority to depart from the plain meaning of the language used. "I cannot doubt," says Lord Campbell, "what the intention of the Legislature was, but that intention has not been carried into

effect by the language used. * * * It is far better that we should abide by the words of the statute than seek to reform it according to the supposed intention." * * * * * * * "Every departure from the clear language of the statute is in effect an assumption of legislative powers by the Court. It has indeed been intimated that this is the case, whenever the Court permits the consideration of consequences to dictate the construction of a doubtful act. The judge must decide, but the law has not spoken. It is evident that his functions necessarily become to a certain extent legislative." Endlich on the Interpretation of Statutes, pp. 10–12, and cases cited; *Brown vs. Blougher*, 14 Peters, 178; *Cearfess vs. State*, 42 Ind., 403.

The only means the Court has of finding the intention of the Act is from the words in which it is expressed. It would seem clear from the evidence in this case that defendant did represent Congdon & Co. and went about the country advertising his employers' business and getting people to send orders to them for liquor. It may be called soliciting or procuring orders; and it may be that the Legislature intended to·reach people doing this kind of business; but, in in our opinion, it certainly failed to do so or express it in Section 2. The section under which defendant is charged only makes the act of forwarding the order a violation of the law. We cannot make the word *forward* mean *solicit* or *procure*. The meaning of the word *forward* is defined in the Century Dictionary · as follows: "To send forward; send toward the place of destination; transmit: as, to forward a letter or dispatches." This Act seems to have been unfortunate in its failure to carry out the supposed intention of the Legislature, as Sections 1 and 5 of the same have been declared unconstitutional and inoperative. (*See Rex vs. Fernandez*, 7th Haw., 505; *Wing Wo Chan & Co. vs. Hawaiian Government*, 7th Haw., 498.) We do not consider the fact that the shipping receipts, and perhaps the bills, were sent in one envelope to Andrade and by him delivered with the

goods to the parties ordering them, can in any way affect the defendant San Tana under this charge.

The prosecution in this case contends that the case of *Rex. vs. J. R. Gaspar*, 8th Haw., 233, is conclusive in this case. We are not of that opinion; in that case the defendant was charged with "selling liquor without a license contrary to Chapter 44, Sections 23 and 34 of the laws of 1882." The circumstances of that case were entirely different from this case; in the Gaspar case the defendant took orders for wine and forwarded them to his employer; the wine was sent to him and he delivered it to the person he got the order from, and collected the money; that was held to be a sale by defendant. Another point decided in that case was, that the Hawaiian Wine Company, holding a license to sell spirituous liquors at a designated store in Honolulu, were not allowed to have branch stores at other places, or allow Gaspar to sell at Hilo, Hawaii, under that license. The defense was that he, Gaspar, received and forwarded orders for the goods, and received and delivered them as ordered and that he was merely an agent or servant of the wine company. The defendant in the case at bar was not charged with selling liquors, and there was not one iota of evidence that he forwarded any order, or that he received or delivered any goods.

We are of the opinion that there was no evidence, either the defendant's or that of any other witness, which showed that he, the defendant, had done any act that was a violation of the law under which he was charged. We therefore sustain the exceptions, and order a new trial.

*Deputy Attorney-General G. K. Wilder*, for the prosecution.
*P. Neumann*, for the defendant.

### DISSENTING OPINION OF JUDD, C.J.

I am obliged to dissent from the decision of my associates. The evidence of defendant himself shows that he, a paid employee of H. Congdon & Co. (licensed dealers in spirituous liquors, having their place of business in Honolulu), while at

Hilo, on the island of Hawaii, went about among the Portuguese and others and procured orders for liquors to be sent them by his employers. The method pursued was this: Defendant would ask a person, A, if he wished say a keg of wine. If A answered yes, defendant asked him to write a letter to Congdon & Co. which A would sign, ordering the wine. If A was unable to write defendant would write the letter for him. The letter was then mailed to Congdon & Co. and it is immaterial to my mind whether it was mailed by A or by the defendant himself. Congdon & Co. in Honolulu would thereupon ship the wine to Hilo directed to A and send the shipping receipt and bill together with others of the same character, in an envelope addressed to one Andrade. Andrade's connection with the affair was this. He had applied for and obtained of defendant the privilege of distributing the liquor to the consignees. His agency in this respect was communicated to Congdon & Co. who approved of it. And when a lot of liquor arrived at Hilo from Congdon & Co. Andrade would go to the post office and receive the envelope above mentioned, have some one read the papers for him and he would then take the receipts to the warehouse and receive the liquor and load it on pack horses, three kegs being a load, and deliver it through the district to the customers to whom they were addressed. Andrade received 25c. a keg for his services in delivering the liquor, which the customer paid. He also delivered the bills for the liquor to defendant, who went around, collected the money and receipted the bills under a power of attorney from Congdon & Co.

The manifest intention of the Act of 1888, under which the defendant was charged, was to prevent the use of agencies in the outer districts by liquor dealers licensed for Honolulu, in order to increase their sales. Though unskillfully drawn and containing some useless words, Section 2 makes it unlawful for any licensed peddler, trader or storekeeper, or any book-keeper, clerk or employee of such to forward to any person, any order for the forwarding, sale or purchase of spirituous liquors, with the intent that the same shall be

forwarded to any person, directly or indirectly to or for the use of any person other than the one forwarding the order. The exception is, that a person licensed to deal in spirituous liquors may do this. Now, to fit the statute to the facts : The defendant San Tana, who is not himself licensed to deal in spirituous liquors "forwards," that is, "helps onward" an order for liquor to be supplied by Congdon & Co., with the intent that the same shall be sent and sold· to A for his use and not for the use of defendant. And if the intent of defendant is that the liquor shall be sold, forwarded or furnished to A by Congdon & Co., whether this be accomplished directly, or indirectly through Andrade, it is forbidden by the law and punishable. The law does not forbid the forwarding of such orders for liquors by the licensed dealer himself, but it forbids those who are not so licensed from doing this. Nor does the law forbid any person ordering liquor to be sent direct to himself, the consumer. The whole transaction was under the supervision of the defendant, the attorney in fact of the licensed dealers. He passed upon the character of the proposed customer as to ability to pay for the goods ordered. He earned his salary in this way. Andrade was his servant, and he could displace him from his agency in distributing the liquors, if proven incompetent. Customers were induced to·buy liquors in large quantities at low rates, and this was certainly within the mischiefs to be remedied by the statute.

It appearing to my mind that the employment of defendant and of Andrade by defendant with the consent of Congdon & Co. was an attempt to evade the law, whereas in fact it was violated, I charged the jury to convict him, and am still of opinion that the charge was right.