APOKAA SUGAR COMPANY, LIMITED, *v.* CHARLES T. WILDER, TAX ASSESSOR, FIRST TAXATION DIVISION, TERRITORY OF HAWAII.

SUBMISSION UPON AGREED STATEMENT OF FACTS.

ARGUED MAY 26, 1913.                    DECIDED JUNE 3, 1913.

PERRY AND DE BOLT, JJ., AND CIRCUIT JUDGE COOPER IN PLACE OF ROBERTSON, C.J.

STATUTES—*prospective and retrospective—construction.*

> The rule that a statute is to be construed as having only a prospective and not a retrospective operation has no application to a statute where the legislature in plain and unambiguous terms has

expressly made it retrospective. With such a statute there is no room for construction.

TAXATION—*rate on income derived during the year* 1912.

The rate of the so-called conservation tax on income derived during the year 1912 was reduced from two per cent. to one per cent. by Act 164, Laws of 1913, the act being expressly made retrospective in its operation whereby the year 1912 was, in effect, designated as the first taxation period thereunder.

OPINION OF THE COURT BY DE BOLT, J.

(Perry, J., Dissenting.)

This is a case submitted by the parties upon an agreed statement of facts. The facts thus agreed upon and signed by the parties are as follows:

"That the said Apokaa Sugar Company, Limited, is and was at all times mentioned herein a corporation duly organized and existing under the laws of the Territory, doing business for profit, and having its usual place of business within said First Taxation Division of the Territory of Hawaii.

"That the said Charles T. Wilder is and was at all times herein mentioned the Assessor of said First Taxation Division.

"That in the month of January, 1913, the said Apokaa Sugar Company, Limited, made a full return, verified by the oath of its duly empowered officers, in the form prescribed by the Treasurer of the Territory for the taxation period ending December 31, 1912, of all the matters required by Section 1282 of the Revised Laws of Hawaii as amended by Act 87 of the Session Laws of 1905.

"That there has been duly levied and assessed on the net profit or income of said corporation, above actual operating and business expenses, derived during said taxation period, and from all property owned and all business carried on by said corporation in the Territory of Hawaii, a tax of two per cent. on said net profit or income as shown by said return, the said net profit or income being the sum of $16,530 and the said tax being the sum of $330.60; and also, in addition to said tax of two per cent. levied and assessed upon said net profit or income as aforesaid, there has been duly levied and assessed, under the provisions of Act 33 of the Laws of 1909 as amended by Act 147 of the Laws of 1911, a further tax of two per cent. on the net

profit or income of said corporation, amounting to the sum of $330.60, said tax being so levied as a special fund to promote the conservation and development of the natural resources of the Territory through immigration and other means, and being hereafter, for greater clearness, referred to as the 'Conservation Tax.'

"That such assessments and levies were made in accordance with law, unless the amount of said last mentioned tax, levied by virtue of the provisions of Act 33 of the Laws of 1909 as amended by Act 147 of the Laws of 1911, and known as the 'Conservation Tax,' is affected by the provisions of Act 164 of the Laws of 1913, approved on the 30th day of April, 1913.

"That on the 14th day of May, 1913, the said Apokaa Sugar Company, Limited, on the demand of the said Charles T. Wilder, Assessor, and to prevent the penalty provided by law for delinquent taxes, paid the first installment of both of said taxes; but paid one-half, viz., the sum of $82.65, of said first installment of said 'Conservation Tax' under protest, and, at the same time, filed a protest and notice under the provisions of Section 1512A of the Revised Laws (a copy of which is hereto annexed and made a part hereof).

"That the said Apokaa Sugar Company, Limited, demands from the said Charles T. Wilder, Assessor, the repayment of said sum of $82.65, on the ground that the same was illegally levied and exacted from it by the said Charles T. Wilder, and asks judgment against him for said amount.

"The question submitted to this court for decision is whether the said Act 33 of the Laws of 1909 as amended by Act 147 of the Laws of 1911 has been modified by said Act 164 of the Laws of 1913 so that the rate of said 'Conservation Tax' is one per cent. instead of two per cent. upon the net profit or income of said corporation derived during the taxation period ending on the 31st day of December, 1912."

The sole question presented by the submission for determination is, whether the so-called conservation tax on the income of the Apokaa Sugar Company derived during the year immediately preceding the first day of January 1913, i. e., during the year 1912, shall be assessed at the rate of one per cent., as contended for by the corporation, or at the rate of two per cent., as contended for by the assessor.

The first legislative enactment in this Territory upon the subject now under consideration was Act 33, Laws of 1909, whereby there was imposed an additional tax on incomes over a certain sum which, when collected, was to be used, three-fourths for the encouragement of immigration and one-fourth for the development, conservation, improvement and utilization of the natural resources of the Territory. This tax has generally been referred to and called the "Conservation Tax." Under the provisions of section 3 of the act mentioned, which section has not been amended, the taxation period was defined as "the year immediately preceding the first day of January of each year in which such tax is payable. Provided, that the first taxation period under this Act shall be the year immediately preceding the first day of January, 1909." Hence, the first taxation period under the act was the year 1908, and the tax for that period, payable in 1909, was fixed at the rate of one per cent. and at the rate of two per cent. for subsequent periods. Section 6 of the act provided as follows: "This Act shall be in effect from the date of its approval, and relate retrospectively to give full effect to the provisions herein contained with respect to taxes for the first taxation period hereunder; and shall continue in force to and until the thirty-first day of December, 1911; provided, that all taxes assessed under the provisions of this Act which shall remain unpaid at the end of said period shall be subject to collection and enforcement in the same manner as though all the provisions of this Act were still in force with respect thereto."

Act 147, Laws of 1911, which amended section 6 of Act 33 by substituting 1913 for 1911, provided as follows: "This Act shall be in effect from the date of its approval and relate retrospectively to give full effect to the provisions herein contained with respect to taxes for the first taxation period hereunder; and shall continue in full force to and until the 31st day of December, 1913; provided, that all taxes assessed under the provisions of this Act which shall remain unpaid at the end

of said period shall be subject to collection and enforcement
in the same manner as though all the provisions of this Act were
still in force with respect thereto."

Act 164, Laws of 1913, approved April 30, 1913, amended
sections 1 and 2 of Act 33 by reducing the rate of the conserva-
tion tax to one per cent. and amended section 6 thereof to read
as follows: "This Act shall be in effect from the date of its
approval, and relate retrospectively to give full effect to the
provisions herein contained with respect to taxes for the first
taxation period hereunder; and shall continue in force to and
until the 31st day of December, 1915; provided, that all taxes
assessed under the provisions of this Act which shall remain un-
paid at the end of said period shall be subject to collection and
enforcement in the same manner as though all the provisions
of this Act were still in force with respect thereto."

Thus, by the Acts referred to, namely, Acts 33, 147 and
164, we have a complete and harmonious statutory scheme cov-
ering the entire period from and including the year 1908 to and
including the year 1915. And, obviously, just as Act 33, as
amended by Act 147, contemplated six taxation periods, name-
ly, 1908, 1909, 1910, 1911, 1912 and 1913, of which 1908 was
the first of such periods, so likewise Act 164 contemplates four
taxation periods, namely, 1912, 1913, 1914 and 1915, of which
1912 is the first of such periods.

The intention of the legislature, we think, is obvious. That
the year 1912 was the first taxation period under Act 164, we
think is clear. The language used is plain and free from ambi-
guity. And "when the terms of a statute are plain, unambig-
uous and explicit, the courts are not at liberty to go outside of
the language to search for a meaning which it does not reason-
ably bear." Suth. Stat. Const., §321. "Where the meaning
of the language used is plain, it must be given effect by the
courts, or they would be assuming legislative authority." 36
Cyc. 1107. "It is a very well-settled rule that so long as the
language used is unambiguous, a departure from its natural

meaning is not justified by any consideration of its consequences, or of public policy; and it is the plain duty of the court to give it force and effect." Id., 1115.

The legislature by Act 164, in direct, positive and unequivocal terms said that the statute shall "relate retrospectively to give full effect to the provisions herein contained with respect to taxes for the first taxation period hereunder." One of the "provisions" of the statute is, that the rate of taxation on incomes derived during the "first taxation period" thereunder, 1912, was fixed at one per cent., and in order to "give full effect" to this, as well as to other "provisions" of the statute, the legislature, in unmistakable terms, expressly gave the statute retrospective operation. Such being the legislative command we have no alternative other than to give the language used "full effect" as directed. The expression, "the first taxation period hereunder," necessarily means the year immediately preceding the first day of January of the year in which the tax is payable, which, under Act 164, was the year 1912. And, inasmuch as the statute has fixed the rate of taxation on incomes derived during the taxation period of 1912 at one per cent., and the act having been expressly made retrospective with "respect to taxes for the first taxation period" thereunder, it follows, necessarily, that the assessor was not entitled to collect and receive taxes from the Apokaa Sugar Company on income for 1912 in excess of the rate of one per cent.

Neither the rule nor the authorities cited in support thereof, that statutes are to be construed as having only a prospective and not a retrospective operation, can have any application to the statute before us, for the reason that the legislature has expressly made it retrospective, and the language used being plain and unambiguous there is no room for construction. 36 Cyc. 1205-1208. If, however, the statute were open to construction, it being a revenue law, it should be construed strictly against the governmental authority. Cooley, Taxation, pp. 197-200; *Castle & Cooke* v. *Luce,* 5 Haw. 321, 324; Suth. Stat. Const., §364.

"It is the general rule that statutes providing for taxation are to be construed strictly as against the state and in favor of the taxpayers, and the burdens and liabilities which they impose are to be kept within the strict letter of the law, and not extended beyond its clear terms by any inference, implication, or analogy." 37 Cyc. 768. On the other hand, viewing the statute as removing a burden from the taxpayer by reducing the rate of taxation from two per cent. to one per cent., it should, if we were obliged to resort to construction, be liberally construed in favor of the taxpayer. Suth. Stat. Const., §441.

There can be no question as to the power of the legislature to release or remit the Territory's claim for taxes. 37 Cyc. 1170, 1171.

The parties having stipulated that the court may enter judgment according as it may find the law, we therefore conclude that the Apokaa Sugar Company is entitled to judgment against Charles T. Wilder, Tax Assessor, First Taxation Division, Territory of Hawaii, for the sum of $82.65. Judgment will be entered accordingly.

*D. L. Withington* (*Castle & Withington* on the brief) for Apokaa Sugar Company.

*Wade Warren Thayer, Attorney General,* for the assessor.

*A. A. Wilder* amicus curiae.

---

### DISSENTING OPINION OF PERRY, J.

Act 33 of the Laws of 1909, approved by the governor on March 22 of that year, provided, for the first time in the history of Hawaii, for the imposition of a special tax on incomes, ever since known as the conservation tax, to be used, three-fourths for the encouragement of immigration and one-fourth for the development, conservation, improvement and utilization of the natural resources of the Territory. The first and second sections directed that, in addition to the tax of two per cent.

authorized by an earlier statute to be levied and collected upon incomes for the general purposes of the government, there should be levied and collected annually upon the net income above $4,000 received by every person and corporation, with certain exceptions not material in this case, a tax of two per cent. "on the amount so derived during the taxation periods defined by this Act." The third section declared that "the taxation period within the meaning of this Act shall be the year immediately preceding the first day of January of each year in which such tax is payable. Provided, that the first taxation period under this Act shall be the year immediately preceding the first day of January, 1909" and further provided that "the rate of taxation upon incomes derived during said first taxation period shall be one per cent.   *   *   *   and the amount of such tax shall be assessed forthwith and be payable in full on or before the fifteenth day of November, 1909." Section 4 expressly made all the provisions of sections 1280 to 1289, both inclusive, of the Revised Laws applicable to Act 33 in so far as the same were consistent with the later act. Section 5 specified the purposes to which the taxes collected should be applied and section 6 read as follows: "This Act shall be in effect from the date of its approval, and relate retrospectively to give full effect to the provisions herein contained with respect to taxes for the first taxation period hereunder; and shall continue in force to and until the thirty-first day of December, 1911; provided, that all taxes assessed under the provisions of this Act which shall remain unpaid at the end of said period shall be subject to collection and enforcement in the same manner as though all the provisions of this Act were still in force with respect thereto."

In 1911 section 6 was amended by striking out the figures "1911" and substituting the figures "1913," but in no other respect. By Act 164 of the Laws of 1913, approved April 30 of that year, sections 1 and 2 of the act of 1909 were amended by making the rate of the conservation tax one per cent. instead of two per cent., section 5 so as to provide that one-half of the

proceeds should be used for the encouragement of immigration, one-fourth for the expenses of the board of commissioners of agriculture and forestry and one-fourth for the development, conservation, improvement and utilization of the natural resources of the Territory and section 6 by substituting the figures "1915" in place of the figures "1913." Act 164 contains no reference to sections 3 and 4 of the original act.

The question now submitted to this court for decision is whether the rate required by law for the conservation tax payable by plaintiff in 1913 upon its income for the year 1912 is one per cent. or two per cent.

It is an established rule of construction that statutes are to be construed as having only a prospective operation unless the intention of the legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used. In every case of doubt, the doubt must be solved against the retrospective effect. 36 Cyc. 1205. "It is a principle which has always been held sacred in the United States, that laws by which human action is to be regulated, look forwards, not backwards; and are never to be construed retrospectively, unless the language of the act shall render such construction indispensable." *Reynolds* v. *M'Arthur,* 2 Pet. 417, 434. "We are to remember there is a presumption against retrospective operation, and we have said that words in a statute ought not to have such operation 'unless they are so clear, strong, and imperative, that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied.'" *United States* v. *American Sugar Co.,* 202 U. S. 563, 577. As well settled is the rule that "where a statute is expressly or by clear implication made retrospective to a certain extent or for a certain purpose, the courts will not by construction give to it a retrospective operation to any greater extent or for any other purpose." 36 Cyc. 1209. See also *Gumpper* v. *Waterbury Traction Co.,* 68 Conn. 424, 427. It is entirely clear that under the law as it stood until April 30, 1913, the

date of the approval of the amendatory act, the rate of the con-
servation tax upon incomes derived during the year 1912 was
two per cent.   The machinery of the law for the return, assess-
ment and collection of that tax was set in operation beginning
with January 1, 1913.   Returns were made during January,
assessments were made prior to April 1, notices of changes by
the assessor in the amounts of the taxable income were mailed
to the taxpayers affected prior to April 1 and the time for the
taking of appeals commenced to run before April 30 although
it did not end until May 15.   As early as February 1, 1913,
the taxes at the rate of two per cent., on the income for 1912,
became a fixed liability of the taxpayers to the government and
their collection was at that date enforceable by action of assump-
sit.   *Keola* v. *Maui Auto Co.,* 20 Haw. 575.   Possibly some of
these taxes were paid, with or without suit, before April 30,
1913.   An act passed on the date last mentioned should not be
held to apply to taxes which had been already returned and
assessed and which had become a fixed liability on February 1,
unless its language is such as to require that construction.   Act
164 of 1913 is by its terms to "take effect upon its approval."
Section 4, however, provides for the amendment of section 6
of Act 33 (L. 1909) in the manner above stated, retaining all
of the language of the original section save as to the change in
the date fixed for the expiration of the act.   The provision that
the original act as amended "shall   *   *   *   relate retrospec-
tively to give full effect to the provisions herein contained with
respect to taxes for the first taxation period hereunder," is
claimed by plaintiff to indicate that it was the will of the legis-
lature that the new rate should apply to the taxes payable in
1913 on incomes for 1912.   In the absence of the provision just
quoted no doubt could be entertained that the new rate would
not become effective until 1914.   The act, both in its original
and in its amended form, expressly makes all of the procedure
prescribed by §§1280 to 1289, both inclusive, of the Revised
Laws, relating to returns, assessments and collections applica-

ble to the conservation tax. Under that procedure returns are made in January of each year and assessments are made and other steps taken in the months following. Unless otherwise provided, therefore, taxpayers' returns for the purposes of the amended act could not be made or required before January, 1914, and the new rate would not go into effect until the same time. The retrospective effect mentioned in section 6 of the amended act is given merely "to the provisions herein contained with respect to taxes *for the first taxation period hereunder*" and "the first taxation period hereunder" is clearly defined by section 3, which has remained unchanged from the passage of the original act, as follows: "Provided, that the first taxation period under this act shall be the year immediately preceding the first day of January, 1909." To define the phrase as referring to the year 1912 seems to me to be a view without support, direct or indirect, in the language of the act and in direct contravention of the legislative definition just quoted.

No provision was made in the amendatory act or in any other statute for the re-imbursement of any sums paid for taxes (in 1913 on incomes for 1912) under the original conservation act at the rate of two per cent. or of sums deposited for costs of appeals in 1913 upon the theory that the tax rate was two per cent. and which, if the amendatory act had not been passed, would have been forfeitable to the Territory under certain circumstances. R. L., §§1246, 1253.

The provision of section 6 relating to retrospective operation was inserted in the original act because there was no pre-existing law relating to a conservation tax and because without such an express declaration the tax would not be assessable until January, 1910, and upon incomes for 1909. The act as originally passed was consistent throughout in the respect under consideration. It provided prospectively for a rate of two per cent. upon incomes for 1909 and subsequent years and retrospectively for a rate of one per cent. upon incomes for 1908. That provision served its full purpose in 1909 and ever since has been and now

is inapplicable to subsequent incomes. .It may be that its presence in the amended act can be accounted for on the theory that it was still desired that the provisions of the original act should continue to operate with reference to the disposition of any unexpended balance of taxes collected upon incomes for 1908; but if it cannot it is simply one more of those instances known to history of inapt or inexact language used by human legislators in attempts to engraft new provisions upon prior statutes.    In amending section 6 the sole object of the legislature would seem to have been to extend the operation of the act for an additional term of two years.    Similar action was taken in 1911 when by Act 146 the life of the act was extended from December 31, 1911, to December 31, 1913, the only change in the section being the substitution of the figures "1913" for "1911."    The continued use in the act of 1911 of the retrospective clause was of as little significance then as is its continued use now in the act of 1913.

Whatever difficulties of construction might have arisen if the act as amended had been enacted for the first time on April 30, 1913, I am satisfied, in view of the history of the legislation on the subject, that the intention of the legislature, sufficiently expressed in the statutes, was that the rate of the tax upon incomes for 1912 should be two per cent. and that the rate for the remainder of the term of the act should be one per cent.

In my opinion judgment should be entered for the defendant.