P. CORREA. *v.* W. A. RAMSAY, LIMITED.
JULIA KING *v.* W. A. RAMSAY, LIMITED.
WILLIAM ROCHA *v.* W. A. RAMSAY, LIMITED.

No. 2090.

ARGUED JUNE 7, 1933.     DECIDED JUNE 15, 1933.

PERRY, C. J., BANKS, J., AND CIRCUIT JUDGE GODBOLD
IN PLACE OF PARSONS, J., UNABLE TO ATTEND
ON ACCOUNT OF ILLNESS.

OPINION OF THE COURT BY BANKS, J.

All of the above cases were separately instituted under the Workmen's Compensation Act. The facts upon which the right of each claimant was predicated being the same it was stipulated that the cases should be heard and determined in one proceeding. The industrial accident board entered an order awarding to each claimant certain compensation. The employer appealed to the circuit court and upon a trial *de novo* the circuit judge also entered judgment in favor of each of the claimants and

against the employer. The cases are here on exceptions.

The circuit judge made the following factual findings: "On and prior to the 9th day of July, 1931, the City Transfer Company, an Hawaiian corporation, was in the hauling and express business. W. A. Ramsay, Limited, also an Hawaiian corporation, was in the business of selling and installing, among other things, General Electric refrigerators. If the Ramsay company had available trucks and sufficient men of its own to handle their own business they did their own hauling and installing. If not they would call upon the City Transfer Company, sometimes for men and a truck; at other times for men only; these men continuing in the general service and pay of the City Transfer Company. The evidence tends to show that this practice, that is, at times calling for both trucks and men, and at other times calling for men only, was quite common, occurring several times a month. On July 9th, 1931, among others in the general employ of the City Transfer Company were Plaucio Correa, William Rocha, and Rollin Bertram Hafford. On this day (July 9th), the Ramsay company requested the City Transfer Company to supply three men. The request was not made to the men, and no particular men were requested by Ramsay company. The request of Ramsay company was granted, the City Transfer Company placing at the disposal of Ramsay company the three men hereinabove mentioned, admittedly retaining them in its general service, and continuing to pay to them their weekly or monthly wage. Ramsay company paid to City Transfer Company 50¢ per hour for each man. A Ramsay company truck, driven by a Ramsay company driver, called for the men; the truck then proceeding to a home on St. Louis College heights. Here they were met by Mr. J. V. Melim, who was in the employ of Ramsay company as foreman, who had in charge the installation of an

electric refrigerator in this home. The foreman of Ramsay company had sole charge of this undertaking and directed these three men as to just what they should do, and as to how it should be done. When this particular task was completed the foreman of Ramsay company directed the driver of the Ramsay company truck to drive with these loaned men in the truck to another residence, where another refrigerator was to be installed; the foreman saying he would meet them there. On the way down from the home on St. Louis College heights to the house where the second refrigerator was to be installed, the truck got beyond the control of the Ramsay company driver, tipped over, landing in a gulch; and, as a result of this accident, Rollin Bertram Hafford was killed, and Plaucio Correa and William Rocha injured." From these findings he drew two conclusions of law, the first being that the Ramsay company was at the time of the accident the employer of the three men selected by the City Transfer Company for the use of the former in installing the refrigerators. For reasons that will presently appear we deem it unnecessary to decide on the correctness of this conclusion. Assuming its correctness, the question, however, still remains whether the employment of the three men by the Ramsay company was of such character as to render that company liable under the Workmen's Compensation Act. The circuit judge thought it was, basing his opinion on his construction of section 3663, R. L. 1925 (a part of the Workmen's Compensation Act), the pertinent portion of which is as follows: " 'Workman' is used as synonymous with 'employee,' and means any person who has entered into the employment of, or works under contract of service or apprenticeship with, an employer. It does not include a person whose employment is purely casual or not for the purpose of the employer's trade or business." The judge's reasoning, as

appears from his written decision, was that the exclusion of a "person whose employment is purely casual" from the benefits of the Act was intended to apply only when the nature of the employer's trade or business, in connection with which the service was being rendered at the time of the injury, was outside his regular trade or business and therefore purely casual, and was not intended to apply to the purely casual nature of the workman's employment. In other words, that if the workman was injured while engaged in the regular trade or business of the employer, he was not within the exclusionary clause of section 3663 even though his own employment was purely casual. We think this was a misconstruction of the statute. It is clear enough from the phrasing of the quoted portion that the legislature intended to except from the scheme provided for the compensation of workmen two classes, (a) those whose employment is purely casual and (b) those whose employment is not for the purpose of the employer's trade or business.

In *Aurora Brewing Co.* v. *Industrial Board*, 277 Ill. 142, the court had before it the following statute, which is substantially the same as ours: "The term 'employee' as used in this act shall be construed to mean * * * every person in the service of another under any 'contract of hire, express or implied, oral or written, * * * but not including any person whose employment is but casual or who is not engaged in the usual course of the trade, business, profession or occupation of his employer." The court placed the same construction on this statute that we think should be placed on ours, saying (p. 145): "* * * so that a workman cannot recover if his employment is casual. Neither can he recover if he is not engaged in the usual course of the trade, etc., of his employer."

In *Western Union Telegraph Co.* v. *Hickman*, 248

Fed. 899, the court had under consideration the following portion of a West Virginia statute: "All persons in the service of employers as herein defined, and employed by them for the purpose of carrying on the industry or business in which they are engaged (casual employment excepted), are employees within the meaning of this act, and subject to the provisions hereof." The court's construction of this statute is disclosed in the first syllabus in which it is said: "Under the Workmen's Compensation Act of West Virginia (Acts 1915, c. 9, as amended by Acts 1915 [Ex. Sess.] c. 1), which exempts from its operation persons in 'casual employment,' the exemption depends, not on the nature of the work performed, but on the nature of the contract of employment, and one hired for a limited and temporary purpose, though within the scope of the master's business, is within the exception." The meaning of our statute in this regard is even more clearly expressed than is that of West Virginia.

The supreme court of Iowa, in *Porter* v. *Mapleton Electric Light Co.*, 191 Iowa 1031, had under its eye the following statute: "'Workman' is used synonymously with 'employe' and means 'any person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship for an employer, except a person whose employment is purely casual or not for the purpose of the employer's trade or business * * *.'" In its interpretation of this statute the court said briefly (p. 1033): "Was the employment of plaintiff, under the facts of this case, 'purely casual?' If it was, then it is wholly immaterial whether or not his employment was 'for the purpose of the employer's trade or business.'"

In *In re Gaynor*, 217 Mass. 86, 104 N. E. 339, the court considered the following statute, which is almost identical with ours: "'Employee' shall include every

person in the service of another under any contract of hire, express or implied, oral or written, except one whose employment is but casual, or is not in the usual course of the trade, business, profession or occupation of his employer." In construing that portion of the statute relating to the exceptions to the definition of "employee," the court said (p. 89): "It is argued that 'or' in the clause quoted from part V, § 2, should be construed to mean 'to wit,' or identity with or explanation of that which goes before. Sometimes it is necessary to attribute this signification to the word in order to effectuate the plain legislative purpose. * * * It often is construed as 'and' in order to accomplish the intent manifested by the entire act or instrument in which it occurs. This frequently is necessary in the interpretation of wills. * * * It is not synonymous with 'and' and is to be treated as interchangeable with it only when the obvious sense requires it, or when otherwise the meaning is dubious. But the word 'or' in its ordinary use and also in accurate meaning is a disjunctive particle. It marks an alternative and not a conjunctive. It indicates one or the other of two or several persons, things or situations and not a combination of them. * * * It is construed as having a different meaning only when the context and the main purpose to be accomplished by all the words used seems to demand it. This is not such a case. It is impossible to say that the legislature did not intend to employ the word in its common significance. Indeed, from what has been said, and especially from the deliberate use upon this point of different words from those of the English act, which our act follows in so many particulars, the opposite conclusion is necessary."

The legislative intent in the statute before us is so clearly expressed and the conclusion we have indicated concerning it is so obviously inescapable that the subject

need not be further labored.

The only other question to be decided is whether the three men furnished by the City Transfer Company to the Ramsay company were casual employees.

The essential facts bearing on this phase of the case are that on the morning of July 9, 1931, the Ramsay company requested of the City Transfer Company the use of three of its employees for the sole purpose of installing two electric refrigerators, one at a residence on St. Louis heights and the other at a residence in another locality in Honolulu. The Ramsay company did not request the use of any particular men but left the selection entirely to the transfer company. The transfer company selected Plaucio Correa, William Rocha and Rollin Bertram Hafford who happened to be on the premises. A Ramsay employee, driving a Ramsay truck, called for these men and proceeded with them to the St. Louis heights residence where the first refrigerator was to be installed. After the installation of this refrigerator the Ramsay employee directed the driver of the truck to proceed to the other residence and while on the way the accident occurred. There is no evidence tending to show that these three men had ever before been used by the Ramsay company for any purpose or that it intended to subsequently use them. Under these circumstances, what sort of employees were they? Were they purely casual employees or were they the antithesis of casual employees? It is not always easy to determine the precise signification of the word "casual" as it is used in the statute. Its definition and application lie in the facts and circumstances of each case.

In *Porter* v. *Mapleton Electric Light Co., supra,* in speaking of "casual," as used in the statute there under consideration, the court said (p. 1033) : "Not all words can be defined with mathematic nicety, and we appreciate that, in construing and defining the terms of the statute

in question, 'the court is bound, not to a narrow technical construction, but rather to a broad and liberal construction, to make effectual the very purposes for which the law was passed.' *Bidwell Coal Co.* v. *Davidson,* 187 Iowa 809. This does not imply that the words of the statute shall not be ascribed their ordinary meaning and signification, or that a strained construction shall be given, to meet the exigencies of a particular case. It is quite evident that the legislature intended a well-defined meaning of the word 'casual,' and that that meaning is its ordinary signification. This word is in common use, and its meaning is well understood. What is that meaning? It is: Occasional; incidental; happening at uncertain times; not stated or regular. Its antonyms are: Regular; systematic; periodic and certain." In this case the court held that the plaintiff was a casual employee, basing its conclusion upon the following facts: Plaintiff was regularly and permanently employed by a telephone company. Through arrangements between the manager of the telephone company and the manager of the defendant company plaintiff was loaned for special service to the defendant company. This employment was to last for three hours. Plaintiff made no arrangements personally with the defendant company as to wages, what work he was to engage in or the duration of the service. He received instructions from the defendant company after "he got on the job." Plaintiff never had any prior employment with the defendant company. While working for the defendant company he was severely burned by a live wire. Regarding the legal effect of these facts the court said (p. 1034): "Clearly, under the facts, plaintiff's employment was purely casual. The engagement was not for a certain period. It was temporary, and for one occasion only. He had regular employment with another company, and it loaned him for a special and particular

service of about three hours' duration; and when that service ended, he intended to return and work for his regular employer. Plaintiff did not know definitely the character of the work he was to do, when he reported for duty to the defendant company."

In *In re Gaynor, supra,* the court held that the employment of the employee was casual on the following facts: T. D. Cook & Company, who were caterers in South Boston, had agreed to serve a banquet for the Mt. Holyoke college at South Hadley. One Joseph C. Gaynor was engaged by Cook & Company to assist in serving the banquet. While preparing to perform his duties he received injuries from which he died. He had never before done any work for Cook & Company and his engagement was for a single day and for one occasion only. In discussing the nature of the employment the court said (p. 90): "It would be difficult to conceive of employment more nearly casual in every respect than was that of the employee in the case at bar. The engagement was for a single day and for one occasion only. It involved no obligation on the part of the employer or employee beyond the single incident of the work for four or five hours at the college. That would have had its beginning and ending, including the outward and returning journeys (but for the unfortunate accident), within a period of less than twenty-four hours. The relation between the waiter and the caterer had no connection of any sort with any events in the past. Each was entirely free to make other arrangements for the future, untrammeled by any express or implied expectations of further employment. The employment was not periodic and regular."

It is equally clear from the facts in the instant case that the employment of Correa, Rocha and Hafford, so far as the Ramsay company was concerned, was at the time of the accident purely casual. The occasion already men-

tioned was the only one, so far as the evidence shows, on which they had done any work for the Ramsay company and they were then employed for a single purpose, namely, to install two refrigerators. They were under no obligation to remain in the service of the Ramsay company after the work was completed and upon its termination Correa and Rocha, who were merely injured, were at liberty to return to their regular employment with the transfer company, and Hafford would likewise have been at liberty to do so had he not been killed.

The exceptions relating to the construction of that portion of the Workmen's Compensation Act discussed in the opinion are sustained. The other exceptions need not be considered. The judgment is set aside and the case is remanded for such further proceedings as may be proper.

*R. A. Vitousek* (*Smith, Warren, Stanley & Vitousek* on the briefs) for W. A. Ramsay, Ltd., and Globe Indemnity Co. of New York.

*F. Schnack* (also on the brief) for City Transfer Co.