## HAWAIIAN TRUST COMPANY, LIMITED, TRUSTEE UNDER THE WILL AND OF THE ESTATE OF JULIAN MONSARRAT, DECEASED, *v.* WILLIAM BORTHWICK, TAX COMMISSIONER OF THE TERRITORY OF HAWAII.

No. 2362.

Argued October 26, 1939      Decided April 27, 1940

CIRCUIT JUDGE MATTHEWMAN IN PLACE OF COKE, C. J., DISQUALIFIED, CIRCUIT JUDGE STAFFORD IN PLACE OF PETERS, J., DISQUALIFIED, AND CIRCUIT JUDGE McLAUGHLIN IN PLACE OF KEMP, J., DISQUALIFIED.

430

OPINION OF THE COURT BY MATTHEWMAN, CIRCUIT JUDGE.

While the wording of the submission warrants the inference that the "question in difference" submitted concerns the claimed legal necessity of the trustee taxpayer paying a business excise tax upon $167.21, the amount of its net income for the year 1934—upon which an income tax was neither paid nor payable as that amount was currently distributed to beneficiaries—there nowhere appears in the submission, in the simplest possible form, as there should, the exact question in difference submitted to this court for answer. That question, however, in the alternative, may be· thus stated:

In the Business Excise Tax Law, Act 42 of the Second Special Session of 1932, did the words, "net taxable income", in clause (1) of section 3 mean the income upon which an income tax was payable under the Income Tax Law, Act 44 of the same session, or did they mean such net income as would be found to exist without making the deduction mentioned in clause (2) of section 6 of the Income Tax Law?

Notwithstanding the fact that in their submission and in their briefs counsel on both sides assumed that the question before the court warranted a resort to statutory construction—in the particular subdivision of that subject concerning legislative history—at the oral argument they agreed that a resort to the legislative history of the act involved was unnecessary and that the question submitted for decision should be determined by a study of the various provisions found in the Business Excise Tax Law and the Income Tax Law. They considered that

statutory construction was involved, even if not that subdivision of the broad subject which concerns legislative history. However, whatever the assumption of the parties to the submission, statutory construction, as technically understood, is not to be invoked in any of its features except for good legal reason. Therefore, before making a decision upon the main question in difference submitted by the parties, there should be determined preliminarily —as the question in difference involves the meaning of a statutory expression—the other question as to whether or not resort should be had to statutory construction. If it should be invoked and especially if the Business Excise Law was one of those statutes to which, by well fixed rules, either liberal or strict construction should be applied, a determination of the submitted question in difference should not be difficult.

The rule is that a resort may and should be had to statutory construction whenever there is what is technically known as an ambiguity. Is there then an ambiguity in the expression in dispute, "net taxable income"?

According to Abbott's Law Dictionary, an ambiguity or duplicity is predicable only of language as to which it is necessary to make a choice of meanings.

Here the parties to the submission seem to agree that it is necessary to make a choice between the following two meanings:

Meaning (1). In the Business Excise Tax Law, Act 42 of the Second Special Session of 1932, the words, "net taxable income", in clause (1) of section 3, meant the income upon which an income tax was payable under the Income Tax Law.

Meaning (2). Those words did not mean the income upon which an income tax was payable under the Income Tax Law, but meant such net income as would be found

to exist without making the deduction mentioned in clause (2) of section 6 of the Income Tax Law.

An ambiguity does not exist when there cannot reasonably be one of the meanings claimed. Usually, however, when in all honesty a difference of opinion arises as to the meaning of a statute, it may be assumed that there is an ambiguity involved, for, if not, it is unlikely that there would be a dispute as to the meaning.

With little difficulty generally a statute may be placed in a class as to which long ago it was determined that there should be either liberal or strict construction of words ambiguously used. For the purpose of statutory construction statutes are specially classified.

The following is a partial list of those which should be liberally construed: laws enacted in the interest of the public welfare or convenience, or in regard for the rights of citizenship, or relating to the military power of the government, or relating to schools and school districts, laws for the construction of works of great public utility, laws for the protection of human life or the preservation of health, laws which are directory, and laws for the prevention of fraud, or providing remedies against either public or private wrongs.

"Remedial statutes are those which do not create, enlarge, diminish, or destroy vested rights. Statutes enacted for the suppression of fraud, the correction of errors, the supplying or curing of defects, the protection of life and property, the remedy of public evils, the redress of existing grievances, introducing some new regulation or proceeding conducive to the public good, or the granting of remedies for the recovery or protection of rights, are known as remedial statutes". 59 C. J. 1106.

To be strictly construed in accordance with the old saying, *ita lex scripta est,* are the following: statutes conferring special privileges on individuals or corporations,

or which constitute exceptions to general statutes, or which give power to subordinate local authorities, statutes which are administrative and those which are mandatory, statutes passed in exercise of the police power, and all statutes of a penal nature, whether civil or criminal. (59 C. J. 1106) Also to be strictly construed are statutes in derogation of sovereignty and legislative grants (59 C. J. 1121, 1122), statutes in derogation of common law or common right (59 C. J. 1124), and revenue laws, the last operating "to impose burdens upon the public, or to restrict them in the enjoyment of their property and the pursuit of their occupations". 59 C. J. 1131.

This court has frequently adopted either liberal or strict construction of an ambiguously worded statute according to the particular class of statutes involved.

Because statutes were remedial, liberal construction was adopted in Shillaber v. Waldo et al., 1 Haw. 31, Lewers & Cooke, Ltd. v. Wong Wong et al., 22 Haw. 765, Re Ichijiro Ikoma, 23 Haw. 291, Silva v. Kaiwiki Mill Co., 24 Haw. 324, Dwight v. Kalauokalani, 24 Haw. 454, Ching Hon Yet v. See Sang Co., 24 Haw. 731, Wong Chee v. Yee Wo Chan, 26 Haw. 785, Uyeno v. Chun Kim Sut, 31 Haw. 102, and Correa v. Ramsay, Ltd., 32 Haw. 735.

For the reason that the statute involved concerned the public health, liberal construction also was applied in Ter. v. Araujo, 21 Haw. 56.

The same was done in the following cases depending upon the constitutional or Organic Act provision as to every law embracing but one subject, the same to be expressed in its title: In re Walker, 9 Haw. 171, Dole v. Cooper, 15 Haw. 297, Ahmi v. Buckle, 17 Haw. 200, Ter. v. Miguel, 18 Haw. 402, and Ter. v. Furubayashi, 20 Haw. 559.

Statutory construction—although not *eo nomine*—was invoked in Territory v. Inter-Island Steam Nav. Co., Ltd.,

33 Haw. 890, where it was held that, although a statute in terms requires "a bond" in favor of the prevailing party before the issuance of a writ of error, a certified check may be given in lieu of a bond. The statute was held to be procedural and was liberally construed.

On the other hand, because statutes were in derogation of the common law, strict construction was adopted in Maguire v. Tong Wo, 5 Haw. 41, Lucas v. Redward, 9 Haw. 23, and Rathburn v. Kaio, 23 Haw. 541. A statute in derogation of the rights of persons was also strictly construed In the Matter of the Estate of His Late Majesty Lunalilo, 3 Haw. 519.

Strict construction also has been followed in cases involving penal statutes, to wit, in The King v. John Asegut et al., 3 Haw. 540, The King v. Kalailoa, 4 Haw. 39, In re Brito, 7 Haw. 42, The King v. Yung Hong, 7 Haw. 359, The Queen v. Gay, 8 Haw. 468, The Queen v. San Tana, 9 Haw. 106, Rep. Haw. v. Ben, 10 Haw. 278, Rep. Haw. v. Vasconcelles, 11 Haw. 228, Ter. v. Fernandez, 15 Haw. 133, In re Kawahara Yasutaro, 15 Haw. 667, Ter. v. Sing Yuen, 18 Haw. 611, Ter. v. Ah Goon, 22 Haw. 31, Ter. v. Scully, 22 Haw. 618, and Ter. v. Palai, 23 Haw. 133.

In Hollinger v. Kumalae, 25 Haw. 669—another case on statutory construction—it was held that statutes providing for disqualification of citizens for office should be strictly construed.

In the following cases involving revenue laws, strict construction was adopted: The Minister of Finance v. Bishop & Co., 3 Haw. 793, Castle & Cooke v. Luce, 5 Haw. 321, Valkenberg v. Treas. Ter. of Haw., 14 Haw. 182, Assessor v. C. Brewer & Co., 15 Haw. 29, Seattle Brew. & Malt. Co. v. Treas., 18 Haw. 117, Apokaa Sugar Co. v. Wilder, 21 Haw. 571, and Frear v. Wilder, 25 Haw. 603.

In Assessor v. C. Brewer & Co., 15 Haw. 29, 38, it

was held: "Revenue laws are to be construed strictly. Castle & Cooke v. Luce, 5 Haw. 321. 'A strict construction in such cases is reasonable, because presumptively the legislature has given in plain terms all the power it has intended should be exercised.' Cooley, Taxation, 200. 'It is a well settled rule of law that every charge upon the subject must be imposed by clear and unambiguous language. Acts of Parliament which impose a duty upon the public will be critically construed with reference to the particular language in which they are expressed. When there is any ambiguity found the construction must be in favor of the public; because it is a general rule that when the public are to be charged with a burden the intention of the Legislature to impose the burden must be explicitly and distinctly shown.'—Potter's Dwarris, Statutes, 255... 'In construing a statute, the same rule of construction which is applicable in construing all documents or instruments between private parties has force. A person who makes an instrument and profers it to another makes it what he chooses and must cause it to express distinctly all that he means it to do.'—The Minister of Finance v. Bishop & Co., 3 Haw. 793, 794, 795."

To the same effect were the rulings of this court in the other cases above cited. In Frear v. Wilder, 25 Haw. 603, 606, it was said: "It is a cardinal rule of construction that a statute imposing taxes is to be construed strictly against the government and in favor of the taxpayers and that no person and no property is to be included within its scope unless placed there by clear language of the statute... 'In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the govern-

436

ment and in favor of the citizen.'" Gould v. Gould, 245 U. S. 151.

The case of Gould v. Gould there cited by this court has been repeatedly cited also by the Supreme Court of the United States. In Old Colony Railroad Co. v. Commissioner of Internal Revenue, 284 U. S. 552, 561, that court held: "If there were any doubt as to the connotation of the term, and another meaning might be adopted, the fact of its use in a tax statute would incline the scale to the construction most favorable to the taxpayer."

In White v. Aronson, 302 U. S. 16, 20, it was said: "Where there is a reasonable doubt as to the meaning of a taxing Act it should be construed most favorably to the taxpayer. Gould v. Gould, 245 U. S. 151. 'Tax laws, like all other laws, are made to be obeyed. They should therefore be intelligible to those who are expected to obey them.' Philadelphia Storage Battery Co. v. Lederer, 21 F (2nd) 320, 321, 322."

Subsequently, in 1938, the Supreme Court of the United States, in Hassett v. Welch, 303 U. S. 303, 314, again cited Gould v. Gould and observed that one of the "settled rules of statutory construction" is that, "if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer . . ."

While the great practical value of the general rule as to choosing either liberal or strict construction of an ambiguous statutory expression according to the nature of the statute involved is well recognized—as shown by the above cited decisions of this court and of the Supreme Court of the United States—it should not be ignored that the latter court, in 1904, gave such recognition to "the force and salutary character of the rule" with some qualifications. It said: "We recognize the force and salutary character of the rule, but it must not be misunderstood. It is not a substitute for all other rules... It conveniently

removes all difficulties from judgment in many cases of controverted construction of laws." Citizens' Bank v. Parker, 192 U. S. 73, 85 (48 Law Ed. 346, 356).

That the Supreme Court then had before it the construction of a charter contract rather than a matter of statutory construction is indicated by the following excerpt from page 77 of the report: "The judgment rests upon the construction of the original charter,—that is, upon the contract between the state and the bank,—but to construe that is also our function."

The comparatively recent case of Hassett v. Welch above cited, again reaffirming Gould v. Gould—the basis of this court's ruling in Frear v. Wilder—puts it beyond question that, as said above, one of the "settled rules of statutory construction" is that, "if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer..."

On the assumption then that there was an ambiguity in the former statutory expression "net taxable income" —that difference in meanings occasioning the "question in difference" at the basis of the submission before us— it is proper to invoke the rules of statutory construction and, under those rules, give a strict construction to the expression under consideration.

The words, "net taxable income", taken at their face value and without extending their meaning, meant the income subject to taxation after making all allowable subtractions.

The Supreme Court of Missouri has held: "Without entering into a consideration of fine shades of meaning of words, we are satisfied that 'taxable income' means income which may be taxed after all exemptions and deductions have been allowed from the total income." State v. Hackmann, 265 S. W. 532, 535.

Indeed the local legislature practically gave a definition

to the words in question, "net taxable income", when, almost immediately following that expression in section 3 of the Business Excise Tax Law, it said, "Such net income",—meaning, of course, the only "net income" which had been mentioned, the "net taxable income"—"operating costs and net loss shall be determined in accordance with the income tax laws of the Territory and this Act." What more natural than to determine the "net taxable income" according to the Income Tax Law and the "operating costs and net loss" by "this Act", meaning the Excise Tax Law?

Thus applying strict construction to the expression "net taxable income" in the former Excise Tax Law and so looking for no implied meanings, we interpret—using that verb in the Lieber sense [2 Lewis' Sutherland Statutory Construction (2nd ed.) 697]—the expression as having what was above designated "Meaning (1)" and so answer the question in difference presented in the submission in favor of the taxpayer, the Hawaiian Trust Company, Limited, Trustee under the Will and of the Estate of Julian Monsarrat, Deceased.

*L. Jenks* (*Anderson, Marx, Wrenn & Jenks* and *Smith, Wild, Beebe & Cades* on the briefs), for the taxpayer.

*R. V. Lewis,* Deputy Attorney General (*S. B. Kemp,* Attorney General, with her on the brief), for the tax commissioner.